24   61<br>
28a 200<br>
24   61<br>
87 240

### ROBERT W. MARTIN v. THE STATE.

Where the penalty for an offence, has been changed, from time to time, by the statutes, it is the province of the jury, if essential in fixing the penalty, to determine at what time the act was committed; and the court ought not to instruct them, under which particular statute they should assess the penalty.

The fraudulent alteration, or false making of a public record, "with intent to defraud the State," is embraced within the provisions of Art. 529, Hart. Dig., as an offence; the "*State*" must be taken to be a "person," within the meaning of the statute.

Statutes of limitations, for the prosecution of crimes and misdemeanors, do not have a retrospective operation; and it was, therefore, correctly held, that the statute of limitations passed in 1854, could not operate as a bar to a prosecution, commenced within two years from the time that statute went into operation, there being no previous limitation to the prosecution of the offence in question.

The limitations prescribed in that statute, it seems, began to run from the time it went into effect; and therefore, prosecutions for offences, previously committed, are barred in two, five, and ten years, respectively, from that period.

APPEAL from San Augustine. Tried below before the Hon. A. W. O. Hicks.

The indictment in this case, charged the offence to have been committed on the fifth day of May, 1854. The jury found the

defendant guilty, and assessed a fine of $1500, and imprison-
ment of five days in the county jail.

*W. W. Wallace*, for the appellant.—Whatever may be thought
of the instruction in chief, or the modification of the fifth in-
struction of the defendant, the proceeding of the court below,
in overruling the third and fourth instructions, asked by the
defendant's counsel, is deemed the most grievous and erroneous,
presented by the record. It must be recollected, that the only
evidence of the time, when the alleged offence was committed,
consisted in the *date*, under which the judgment in Hank's favor,
was entered in book E, and the date of the verdict upon which
the said judgment purported to have been rendered, viz., 21st
April, 1848. The indictment was found in October, 1855, more
than *seven* years after the commission of the alleged offence, and
it seemed indisputable, that this prosecution was barred by the
statute of limitation of 1854, whatever complexion the offence
might assume, under the rulings of the court, whether that of a
misdemeanor, or a felony. By the first of these instructions,
the court was asked to instruct the jury, that if they believed,
from the evidence, that the offence charged in the indictment,
was committed more than two years next before the finding of
this indictment, and the commencement of this prosecution, then
the prosecution was barred by the statute of limitations, and
they should find for the defendant. By the second, a similar
instruction was asked, based upon the limitation of five years,
prescribed by the same statute. The court refused these in-
structions, on the ground that the Act of 1854, having been
passed long after the commission of the offence, and after the
limitation it prescribes had elapsed, as to this offence, it would
constitute at once a bar to the prosecution, and become a retro-
active law. The ruling of the court, it is confidently believed,
is utterly unsustainable, the Act of 1854, not falling within the
constitutional prohibition as to retrospective laws.

These laws have a well-defined and constitutional meaning, and
it is well understood, the constitutional prohibition was intended

merely to add a new safeguard to vested rights. No law, however retroactive in its operation, comes within the constitutional meaning of a retrospective law, unless it impairs some vested or acquired right. The prohibition on the subject, goes no further, and is understood to go no further. The regulation of remedies to enforce rights, whether they shall be in this or that form, in this or that court, and within what period of time or limitation, rights shall be asserted, has always been deemed a legitimate subject of legislation. Statutes of limitation, wisely termed statutes of repose, have never been regarded as impairing the obligation or sanctity of contracts, or vested rights, provided they gave a reasonable time and opportunity, for the assertion of rights under them. If no such reasonable time should be allowed, and they should become an actual bar the moment they were passed, such statutes would be, in civil cases, unconstitutional, retrospective in their operation, and void. Why? Because, leaving no reasonable opportunity to the claimant to assert his rights, such statutes would then impair the obligation of contracts and vested rights. So also, if a debt or contract was barred by the statutes of limitation, and the debtor or contractor had acquired a release from it, by operation of law, in this way, the legislature could not revive the debt, or restore the remedy for its enforcement, for the same reason. Such a statute would be retrospective, in the constitutional sense of the word, and within the spirit of the constitutional prohibition. Gautier v. Franklin, 1 Texas Rep. 732, and De Cordova v. City of Galveston, 4 Id. 470, contain admirable discussions of this subject; and a distinct recognition of the principle, that the time elapsed between the cause of action and the passage of the statute, is to be computed in the application of the statute. So far, then, the statute cannot be unconstitutional, though retroactive, in one sense of the word. It violates no provision of the constitution, because it violates no contract, and impairs no vested or acquired right. *Cessante ratio, cessat ipsa lex.*

The Act of 1836, which defined the offence of forging a public record, and prescribed the punishment of the same, under

which this offence was committed, prescribed *no limitation* to the offence of *forgery*. The Act of 1854, first limited prosecutions for this offence: and surely it cannot be pretended, that a statute, limiting a prosecution, which before was unlimited, and so far mitigating the severity of the law, impairs vested and acquired rights. What vested right does it impair? What right, civil or criminal, did it circumscribe, impair or endanger? So far as it barred prosecutions, for offences which had been committed at the time of the passage of the act, for a longer period than the limitation fixed by the statute, so far it was an act of amnesty or oblivion, on the part of the government. Whether, therefore, retrospective laws are applicable, or not, to criminal proceedings, it is clear the Act of 1854, imposing a limitation, for the *first time*, to prosecutions for forgery, does not fall within the constitutional prohibition on this subject. Instead of weakening the accused, it armed him with a new and formidable defence; and instead of impairing vested rights, it clothed the accused with the panoply of a new and cumulative defence, advancing the policy of the constitutional prohibition, on the subject of retrospective laws. The idea that the Act of 1854, imposing a limitation upon prosecutions, partakes of the character of an *ex post facto* law, is simply preposterous. No law can be *ex post facto* in its character, which mitigates, or mollifies, the severity of the law, for this is in favor of the citizen. (9 Bac. Abr. 221, note; 2 Story on the Constitution, 199, § 1345, and authorities cited.)

Such, however, of the provisions of this act, which increased the grade of the offence, or its punishment after its commission, or made that felony which was not felony, when committed, come clearly within the rule of an *ex post facto* law, and are unconstitutional and void. (Id.)

Whatever may be the operation of a statute, whether retroactive or not, in point of fact, if it do not impair vested rights, or impair the obligation of contracts, or in criminal cases, increase the grade of the offence, or its punishment after its commission, or make that a felony or offence, which was not such

when committed, such statute is neither a retrospective law in the meaning of the constitution, nor an *ex post facto* law. And with this restriction, or understanding, it is clearly within the constitutional authority of the legislature, to modify or repeal the existing remedies, and adopt others of a retroactive operation. So the rule of law seems to be understood, and it only remains for us to see whether the legislature intended the Act of 1854 should apply to all future prosecutions, for past as well as future offences. It expressly enacts, § 75, p. 70, that "all misdemeanors shall be prosecuted by indictment, or other accusation, within two years *after the commission of the offence,* and not afterwards. All felonies, except murder, manslaughter, treason, rape, robbery from the person, and burglary, shall be prosecuted by indictment within five years after the commission of the offence, and not afterwards."

The language of the act in this section, is marked with uncommon clearness and precision. It seems to admit of no misapprehension. The act prescribes a limitation to each of the two classes of offences, and fixes the commission of the offence as the point of time, from which the statute shall run. It commands the indictment to be found within two years in one case, and five in the other, after the commission of the offence; and it forbids the prosecution to be commenced afterwards. The initial point from which the statute is to run, is fixed at the commission of the offence; and in its comprehensive terms, the act embraces *all misdemeanors* and *all felonies,* whether past, present or future, on which prosecutions are to commence. The retroactive principle, which includes merely the computation of past time, and here maintained as authorized by the Act of 1854, has been twice deliberately recognised in civil cases by this court, in Gautier v. Franklin, and De Cordova v. City of Galveston; and the principle is the same, whether the cause is civil or criminal. (Wharton's Criminal Law, 480, citing 2 Pars. 453.) If the statute so construed, be not retrospective in the constitutional sense of the term, in civil cases, it is difficult to perceive how the act can be unconstitutional for limiting prosecutions *in*

*favorem vitæ et libertatis,* which were before unlimited, and extending to parties charged with public offences, the hand of mercy or amnesty, in the form of a statute of limitations. It is respectfully submitted, that on this point the judgment of the District Court ought to be reversed, and the case dismissed.

*Attorney-General,* for the appellee.

BELL, J.—The appellant was indicted on the 12th day of October, 1855. The indictment against him contains three counts. The first count charges that the appellant "did falsely make a certain entry on and in the records of the District Court of San Augustine county, the said records then and there being public records; the said falsely made entry, &c., becoming, and being a part of the public records of the said San Augustine county District Court." The second count, charges that the appellant "did fraudulently alter a record of the District Court of San Augustine county, the said record then and there being a public record." The third count charges that the appellant fraudulently altered the records of the District Court of San Augustine county, and proceeds to state with particularity, in what the alleged fraudulent alteration consists. Each count of the indictment purports to set out *in hæc verba,* the forged entry, which, it is charged, the appellant made in the records of the District Court of San Augustine county.

We do not think it necessary or proper for us to remark upon the testimony in the case, further than to say, that there was evidence that the appellant was the clerk of the District Court of San Augustine county, from about the year 1845, until the beginning of the year 1853. Nearly all the witnesses thought that the entry on the minute-book of the court, which was alleged to be the forgery in question, was written in a feigned hand. Some of them thought it was written by the appellant. The present clerk of the court testified that the minute-book containing the entry, was one of the record books of the office, and came into his custody when he succeeded the appellant in the clerkship, in January, 1853. There was other testimony in the

Martin v. The State.

cause, but we will express no opinion of the sufficiency of the testimony to establish the guilt of the appellant, inasmuch as the cause must be remanded for another trial.

The first question is, supposing the appellant to be guilty, against what law did he offend? The 26th section of the Act of 21st December, 1836, punishing crimes and misdemeanors, provided, that "every person who shall feloniously steal, take away, deface, utter, or falsify any record, writ, process, or other proceedings, in any of the courts of this republic, or any office for record," shall be punished, &c. We are of opinion that this statute did not embrace the offence charged in this indictment. But the 54th section of this Act of 21st December, 1836, provided, " that all offences known to the common law of England, as now understood and practised, which are not provided for in this act, shall be punished in the same manner as known to the said common law." The offence charged in the indictment was known to the common law, and might have been punished by virtue of the said 54th section of the Act of 1836, so long as that section was in force. But as respects this offence, the 54th section of the Act of 1836 was repealed by the Act of the 20th of March, 1848. The Act of the 20th of March, 1848, provided, that all laws and parts of laws, conflicting with it should be repealed. The 33d section of the Act of March 20th, 1848, provided, in express terms, for the punishment of this offence, and therefore the Act of 1848 repealed, or took the place of the 54th section of the Act of 1836, so far as this particular offence is concerned.

The Act of the 20th of March, 1848, went into effect on the 1st day of January, 1849. Until the 1st day of January, 1849, therefore, this offence was punishable as at common law, by virtue of the 54th section of the Act of the 21st December, 1836, which had never before, as to this offence, been repealed. After the 1st of January, 1849, this offence was punishable under the provision of the 33d section of the Act of 20th March, 1848, by confinement in the penitentiary.

It is contended, that the offence charged in this indictment, is

not embraced within the provisions of the 33d section of the Act of the 20th of March, 1848, because that section punishes the false making, or fraudulent alteration of a public record, only when it is done " with intent that any person may be defrauded." It is said, that the section does not reach the case of a fraudulent alteration, or false making of a public record, "with intent to defraud the State;" but we think the State must be taken to be a "person," within the meaning of the statute.

I have noticed the provisions of the law of 1836, and of the law of 1848, because it was necessary to do so, in order to present clearly, what seems to us to be an error in the charge of the court in this case. In order to do this, however, we must advert to the statement of facts. There is no evidence contained in the statement of facts, showing or tending to show, at what time the offence charged in the indictment was committed. We presume, however, from what is disclosed in the record, that the false entry in question, appeared in the court below, to bear date of the 21st of April, 1848. At that time, the law of 20th of March, 1848, had not gone into effect.

There is not, however, a particle of evidence contained in the statement of facts, to show at what time the alleged false entry appeared to have been made in the minute book of the court. There is, in the statement of facts, a certificate of B. F. Benton, the present clerk of the District Court of San Augustine county, stating that the alleged forged entry appeared to have been made in the minute-book, under date of the 21st of April, 1848. This certificate bears date on the 23d of May, 1859, long since the statement of facts was signed by the judge who presided below. This certificate, of course, is no part of the statement of facts, and cannot be noticed by this court as evidence. The petition in the case of Bird L. Hanks against the State, in which named case the alleged forged entry was made, bears a file mark of the 17th January, 1847, and purports to have been verified by affidavit, before the then district judge, on the same day. But the appellant was not indicted for forging the petition, and the date of the filing of the petition furnishes no evidence of the time

when the alleged forged entry was made. There is, therefore, as was before stated, nothing before this court, to show when the alleged forged decree was entered on the rècord book. From this it follows, that we cannot know what law was in force at the time the offence was committed. The judge below assumed, in his charge to the jury, that the law of 1848 had no application to the case. This, we think, was going too far. It was the province of the jury to ascertain, if it could be ascertained from the testimony, at what time the offence charged in the indictment was committed, and the punishment, of course, would be in accordance with the provisions of the law in force at that time, unless that punishment was ameliorated by some subsequent statute having relation to the offence.

The judge instructed the jury, that the offence was punishable by fine and imprisonment, at the discretion of the jury. This conclusion was reached, doubtless, by treating the offence as a common law offence, and applying to it the provisions of the Act of the 9th of February, 1854, which was supplemental to the Act of the 20th of March, 1848. The Act of the 9th of February, 1854, provides, that all offences known to the common law, the punishment of which is not provided for in the statutes of this state, shall be punished by fine and imprisonment, at the discretion of the jury.

The 54th section of the law of 1836, as to this offence, was in force until the law of the 20th of March, 1848, took effect, which was on the 1st day of January, 1849. If this offence then, was committed before the 1st day of January, 1849, it was an offence against the 54th section of the law of 1836. The law of 1836 punished this crime as at common law. At common law, the crime of forgery, or the false making of any writing, with intent to defraud any person, was punishable by fine, imprisonment, and pillory. Particular kinds of forgery were punished in England, by the different statutes of that realm. The offence of forging a court roll, with intent to affect title to real property, was punishable by the statute of 5 Eliz. ch. 14, by forfeiture to any person injured, of double the costs and damages, by pillory,

by having the ears cut off, the nostrils slit and seared, and by forfeiture of all lands to the crown, and perpetual imprisonment. The statute of 56 Geo. 3d, ch. 138, affected the common law punishment for forgery, by taking away the punishment by pillory, and leaving fine and imprisonment as the only punishment.

We think, then, that the Act of the 9th February, 1854, making offences known to the common law, punishable by fine and imprisonment, at the discretion of the jury, may be considered as ameliorating the common law punishment for forgery. The statute of 1854 provided, that where the punishment of offences committed before its passage was ameliorated by its provisions, and such offences were tried after it took effect, the judgment in such cases should be according to the punishment prescribed by its provisions; in other words, the offender should have the benefit of the amelioration of punishment. If, then, this offence, of which we are now inquiring, was committed before the 1st of January, 1849, it was an offence against the 54th section of the law of 1836, and by the provision of that section, was punishable as at common law, that is to say, by fine, imprisonment and pillory; but the cause being tried, after the law of the 9th of February, 1854, went into effect, it would be punished under the last named law, by fine and imprisonment, at the discretion of the jury, because the law of 1854 mitigated or ameliorated the common law punishment. But if this offence was committed after the 1st day of January, 1849, it would be punishable by confinement to labor in the penitentiary, by the provisions of the 33d section of the law of the 20th March, 1848.

By this it will be seen, that it was important to ascertain when this offence was committed, in order to prescribe the proper punishment for it; and because the judge below assumed that the law of 1848 had no application to the case, instead of leaving it to the jury to determine at what time the offence was committed, and by their verdict to ascertain whether or not the law of 1848 was applicable to the case, there was error for which the judgment below must be reversed, and the cause remanded.

But this record presents another question, which we feel it to

be our duty to decide, and which has given us no inconsiderable embarrassment. That question is, whether or not, any law of limitation of this state, is applicable to this case? The only law of limitation, in relation to crimes, that was in force in the republic of Texas, and in the state of Texas, prior to the 1st of May, 1854, when the Act of the 9th of February of that year went into effect, was the law of the 21st of December, 1836. The 45th section of that law provided that, "No person shall be prosecuted, tried or punished for any offence, (murder, arson, forgery, counterfeiting and larceny excepted,) unless the indictment, presentment, or information for the same be found or exhibited within one year next after the offence shall be done or committed." That law, it is obvious, had no application to this case, for it prescribed no limitation for the prosecution of the offence in question. The Act of February 9th, 1854, provided, that misdemeanors shall be prosecuted within two years, and not after; certain enumerated felonies within five years, and not after; and certain other felonies within ten years, and not after. This law went into effect on the 1st day of May, 1854.

The offence in question is charged in the indictment to have been committed on the 5th day of May, 1854. The indictment was filed in court on the 12th day of October, 1855. On the trial of this cause, in the court below, the defendant's counsel asked the court to instruct the jury, that if they believed, from the evidence, that the offence was committed more than two years before the finding of the indictment, the prosecution was barred by limitation. The court was also asked to instruct the jury that if they believed, from the evidence, that the offence was committed more than five years before the finding of the indictment, the prosecution was barred. The judge below refused both these instructions, being of opinion that the limitations prescribed by the Act of the 9th of February, 1854, had no application to this case, inasmuch as two years had not elapsed from the time that act went into effect, before the time of the finding of the indictment. As the time when this offence was actually committed, may be ascertained upon another trial,

to the satisfaction of the jury, it becomes necessary for us to decide, whether the statute of 9th February, 1854, can have a retrospective operation, so that the limitations prescribed by it, can operate as a bar to the prosecution of offences committed before it went into effect, and prosecuted in less than two years after it went into effect. After as diligent search, as the amount of business before us allows us to make, we have been able to find no authority for applying to a criminal statute, any other rule than the ordinary one applied to civil statutes; that all laws must be prospective in their operation, and will not be permitted to have a retrospective operation, unless it is the clearly expressed intention of the legislature which enacts them, that they shall have such operation.

The rule, that civil statutes must be construed to operate prospectively and not retrospectively, is so well established, that we need not quote the numerous cases that have been decided in England and in this country, in which this principle has been recognised. In his opinion, in the case of Dash v. Van Kleek, 7 Johns. 499, (I quote the page on which the opinion commences,) Chancellor KENT said, " It is a principle in the English common law, as ancient as the law itself, that a statute, even of its omnipotent parliament, is not to have a retrospective effect."

I find this principle in relation to the construction of statutes, everywhere recognised by the law-writers, and in the adjudications of the courts; and I can nowhere find that the rule is different in relation to criminal statutes, from what it is in relation to statutes affecting only civil rights. There is a single sentence in Wharton's American Criminal Law, in relation to a criminal statute of the state of Pennsylvania, which says that it is retrospective, and a case is cited; but we have not been able to see that case, so as to determine in what sense the statute is held to be retrospective.

The reason given for the general rule that statutes shall not be permitted to have a retrospective operation, is that vested rights ought not to be affected. It may be contended, and with force too, that there is less reason why the legislature should not

interfere with the prosecution of offenders against the law, than there is that laws should not be passed, affecting or taking away vested rights of citizens. But it may be doubted, whether the argument is sufficiently weighty to authorize a court to declare that the legislature has passed an act of grace, cutting off prosecutions against offenders, unless that intent of the legislative mind is expressed in the clearest and most explicit terms. Previous to the Act of the 9th February, 1854, there were many offences, the prosecution of which was not affected by any law of limitation. Undoubtedly, the legislature might have declared that the Act of February 9th, 1854, should have a retrospective operation, and that no offence previously committed should be prosecuted, except within a certain time after the commission of such offence. But if the same rule of construction applies to criminal and to civil statutes, we are to take it for granted that in passing the Act of 9th February, 1854, the legislature acted with respect to the general rule that statutes should have a prospective, and not a retrospective operation; and this rule should be applied in the construction of this statute, unless it clearly appears, that it was intended to look backwards, and to throw the mantle of oblivion over past offences, by not permitting prosecutions after the lapse of a certain time after the commission of the offence. We do not think that such an intention can be clearly inferred from the language of the act. On the contrary, we think that one of its sections shows a different intent. The 81st section of the act provides that "no offence committed, and no penalty or forfeiture incurred, previous to the time this act shall take effect, shall be affected thereby; except that when any punishment, forfeiture or penalty shall have been mitigated by the provisions of this act, such provision shall apply to and control any judgment to be pronounced upon the offender."

We cannot say, that it is clear from this section, that the legislature meant any thing more than to declare that the punishment of offences, committed previous to the time the act should go into effect, should not be increased, or held to be entirely abolished. The object of the section was, probably,

6

to declare that it was not the intention to abolish offences, or to increase their punishment; but that where the punishment, of what was before an offence, was mitigated, the offender should suffer the punishment prescribed by the act in question. It may be, that the subject of the limitation of prosecutions for former offences, was not in the mind of the legislature, when this section was under consideration. But it seems to us, that it is safer to give this section such a construction as will restrict the operation of the section, which prescribes the limitations to a time subsequent to the passage of the act, than to hold, in the absence of clear authority that it is proper to do so, that the statute may have a widely retrospective operation, and interpose a shield between the State and numerous offenders against the laws.

We think, then, that the judge below did not err, when he held, that the statute of 1854 could not operate as a bar to a prosecution, commenced within two years from the time that statute went into operation, there being no previous limitation to the prosecution of the offence in question. We think the limitations, prescribed in the statute, would begin to run after the statute went into effect, and that prosecutions for offences, even if previously committed, would be barred in two, five, and ten years, respectively, after the statute went into effect. We have come to this conclusion, not without hesitation, and our views are here expressed, in order that this question may receive the attention of counsel. The case must be reversed and remanded, for the reasons given in a former part of the opinion; and if the case comes back to this court, and upon more mature deliberation, and further investigation, we are brought to the conclusion, that the opinions here expressed are erroneous, we will be ready to renounce them, and put ourselves right upon so important a question.

In arriving at these conclusions, we have been not a little influenced by the fact, that the courts of this state refused to give to the statue of limitations of 1841, a retrospective operation in any case, and that, when there was a strong feeling in the coun-

try that such a construction would be beneficial to the interests of the state, or to many of her citzens. It is to be borne in mind, too, that a retrospective operation, to a certain extent, might have been given to our statute of limitations of 1841, upon clear authority. It is well settled, that the legislature may change the period of limitation, and diminish the time allowed within which to bring suits, because statutes of limitation are held to affect the remedy, and not to take away the right. It is not competent for the legislature to take away all remedy, but they may shorten the period within which to bring suits, so that a reasonable time be left; and what is a reasonable time, is a question for the courts. The courts of this state, refused to apply this rule to the construction of our statute of 1841. If suit had been brought two years after that statute went into effect, upon a promissory note, only three years past due at the time the statute took effect, the courts might have held such a claim to be barred by the statute, because the holder of such claim had one year after the statute went into effect, within which to bring his suit, before four years had elapsed from the time his cause of action accrued. The courts might have said, and found good authority for saying, that such a claim was barred. But they refused to give the statute that construction, and their refusal was not upon the ground, that to do so, would have been to cut off vested rights; for courts of the highest authority have held, that such a construction of statutes of limitation, did not cut off vested rights; their refusal was upon the principle, that statutes ought to operate prospectively, and not retrospectively, for other reasons besides those growing out of the impolicy and injustice, of an interference with vested rights.

The cases of Gautier v. Franklin, 1 Texas, Rep. 732; and De Cordova v. The City of Galveston, 4 Id. 470; instead of being authorities in favor of the proposition, that a statute of limitation ought to operate retrospectively, are authorities the other way. In both those cases, the statute of 5th February, 1841, was held to have no retroactive effect upon contracts, but only began to affect them from and after its passage; to use a homely

expression, the operation of the statute was held to be forwards, and not backwards. And it is not unworthy of remark, that the statute of 1841, provided for the institution of suits, for the collection of money, due for fifteen years and upwards; which, when we consider the condition of this country, at the time that statute was enacted, will be regarded as a very strong evidence of legislative disinclination, to give even a statute of limitations a backward sweep. The judgment of the court below is reversed, and the cause remanded.

WHEELER, C. J., dissenting.—I concur in the reversal of the judgment, and am of opinion, that the limitation prescribed to prosecutions, applies as well to prosecutions for offences, committed before the passage of the statute, as afterwards; and that, as the words of the statute plainly import, the limitation commences to run, from the time of the " commission of the offence;" whether that was before or after its passage. The statute makes no distinction, as respects the limitation; it makes no exception, from its provision, of offences previously committed; and I know of no principle, or rule of construction, which will authorize the court to engraft an exception upon the statute. It is a statute, relating to the remedy, and being enacted for the benefit of persons accused, is not an *ex post facto* law. The constitutional inhibition of the enactment of retroactive laws, and laws impairing the obligation of contracts, has no application to penal statutes. Retroactive criminal laws, which are forbidden, are those which come under the denomination of *ex post facto* laws. There is nothing to prevent statutes, respecting crimes, from being retrospective, provided they do not come under that denomination.

It is an acknowledged general rule, in the construction of statutes, that they will not be construed to have a retrospective operation, so as to destroy or impair rights of property, or of action, unless the legislature have plainly expressed such to be their intention. But laws which affect the remedy merely, are not held to be within the rule, or the inhibition against retro-

spective laws, unless the remedy be entirely taken away, or so restricted, as to impair the right. Nor, as I conceive, do statutes relating to the punishment of offences, come within the rule of construction, or the constitutional inhibition, though their effect should be wholly to defeat a prosecution. On the contrary, laws respecting crimes, whether they relate to the remedy merely, or to the offence, are, I think, always construed to relate to past, as well as future offences, where their operation is in any wise beneficial to the accused; unless the legislature have plainly declared, that they are not to receive such a construction. To give such effect to laws respecting crimes and punishments, is not to render them retrospective, or retroactive laws, in the sense of the constitutional inhibition. These terms have no application to such laws, but relate exclusively to laws affecting civil rights. (De Cordova v. The City of Galveston, 4 Texas Rep. 470.)

I do not think the reservation contained in the 81st section of the act, was intended to have, or should be construed to have, any effect upon the limitation contained in the 75th section. That section was intended only to prevent repeals by implication, and to enforce the observance of the rule, which would have applied on general principles, without its enactment, that where the act mitigates the punishment, the milder penalty should be imposed. To hold it to apply to the limitation prescribed for prosecutions by the act, would be to except all offences committed before the passage of the act, from the operation of the periods of limitation therein contained, and to hold that those offences would never become barred under its provisions. I cannot think, that such was the intention of the legislature.

There may be differences of opinion, respecting the policy of prescribing so short periods of limitation, to prosecutions for high crimes. But that was a question for the law-making power; and I can see no reason why the legislature should have intended the limitation to apply to future, and not to past offences. The same reasons, and the same policy, which dictated that the prosecution should be commenced within a prescribed period, after the offence was committed, would seem to apply equally to

offences committed before, as to those committed after the passage of the statute.

Entertaining these views, I could not give my assent to the imposition of the pains and penalties of the law, where the prosecution had not been commenced until after the expiration of the time within which the legislature have positively enacted, that the offence "shall be prosecuted," or be forever barred. Before I could venture to pronounce sentence, I should desire to be convinced of my right to do so, by adjudications in point, supported by very satisfactory reasons. But I apprehend, if the question shall be found to have been adjudicated by other courts, it has been in accordance with the opinion I have expressed. The only reference I have seen to any case, apparently in point, is by Mr. Wharton, in his Treatise on Criminal Law, p. 450, § 446, 4th edit.; and in his Digest, vol. 1, p. 523, § 802, 6th edit.; to the case of the Commonwealth v. Hutchinson, Q. S. Pa., 7 Leg. Int. 118; 2 Pars. 453. We have not access to the case, but I think it will be found fully to support this opinion.

Reversed and remanded.