Statement of the case.

# FAGAN & OSGOOD V. BOYLE ICE MACHINE CO.

(Case No. 2083)

1. RECEIVER—INSOLVENT CORPORATION—CLAIM—CREDITOR MAY CONTEST, WHEN—
When, in a suit by creditors' bill against an insolvent corporation, the property of the company has, by decree of court, been placed in the hands of a receiver, to be converted into money and distributed amongst the creditors, every creditor whose claim has been recognized or established by any of the modes pointed out by the decree, becomes a *quasi* party, and may appear and resist before the master the allowance of any claim of a rank or dignity equal to or greater than his own. If not satisfied with the action of the master, he may, by leave as of course, except to that officer's report, and have his objections to the obnoxious claim passed upon by the court.

2. SAME—CONTESTED CLAIM—SUIT—RIGHT OF APPEAL—Every claim presented against a fund in the hands of a receiver, if contested before the court, becomes, in effect, a suit against the receiver, which is ended by a final judgment allowing or rejecting the claim ; and any party to the contest, dissatisfied with the result, may have the proceedings revised on appeal.

3. MECHANIC'S LIENS—CORPORATIONS—A corporation may, under the law, acquire a lien for machinery, material, fixtures, etc., furnished, the same as an individual.

4. SAME—RECEIVER—A creditor who, at the time of the appointment of a receiver, has a lien, under the statute, for materials, machinery, etc., furnished, may record his contract, and thus fix and secure his lien, after the receiver has been appointed. The recording of the contract after the appointment does not newly encumber the property, but simply fixes and secures upon it an already existing lien.

5. SAME—MATERIAL, ETC., SOLD AND DELIVERED BEYOND THE STATE—The statute gives one a lien on land in the state for the price of materials to be used in the erection of an improvement on the land, notwithstanding the sale and delivery of such materials may have taken place beyond the limits of the state.

6. CASES REVIEWED—The cases of Birmingham Iron F. *v.* Glen Cove Co. (78 N. Y. 30), and Gaty *v.* Casy (15 Ill. 189), reviewed.

APPEAL from Victoria. Tried below before the Hon. H. Clay Pleasants.

On April 16, 1884, Ayers & Cannon, A. Levi & Co., and A. F. Higgs filed their original petition, in the nature of a creditor's bill, in the district court of Victoria county, against the Texas Continental Meat company, a private corporation established under the laws of Texas. The petitioners alleged that they were creditors of the defendant company, and set forth the amounts due them respectively ; that the company was also indebted to divers other persons, and that its total indebtedness aggregated about $150,000. Petitioners further alleged that the defendant was unable to pay its debts, and was hopelessly insolvent ; that it was entirely without funds with which to continue its business, and was unable to borrow ; that on account of its financial embarrassment and its inability to raise means for the further prosecution of its business,

which was the slaughtering of live stock and refrigerating of meats, it had been obliged to formally and finally suspend operations; that the defendant's assets consisted of certain personal property and choses in action aggregating in value about $16,000, and of two certain tracts of land with the slaughter-houses, refrigerating apparatus, and appurtenances thereon and thereto belonging—one, of the estimated value of $100,000, situated at Fort Worth, in the county of Tarrant and state of Texas, the other of the estimated value of $50,000, situated at Victoria, in the county of Victoria; that if the assets should be subjected to the payment of the defendant's debts through the ordinary process of suit on the part of creditors, they would prove wholly inadequate for that purpose; and that the property was liable to waste and decay and also destruction by fire. Petitioners, on behalf of themselves and other creditors who might come in and contribute to the expense of the suit, prayed that a receiver be appointed to take charge of and preserve, pending the suit, the property and effects of the defendant, that they might have judgment for the amounts due them, respectively, and that the assets of the company be converted into money and applied to the payment thereof, etc. On the same day, the defendant company accepted service, and the judge of the court, sitting in chambers, appointed F. R. Pridham receiver, with authority to take possession of all the property and effects of the company and to hold the same until the further order of the district court. Pridham at once duly qualified as receiver.

On November 11, following, the appellee, the Boyle Ice Machine company, a private corporation, established under the laws of Illinois, and transacting business at Chicago, in that state, obtained leave to intervene in the cause, and, on the same day, filed therein its petition of intervention, alleging that the defendant, the Texas Continental Meat company, was indebted to it, the intervenor, in the sum of $22,000, balance due for labor performed and for machinery, tools, etc., furnished by it in the erection, construction, and completion of the defendant's slaughter-house, located on its tract of land in Fort Worth, Tarrant county; that on May 1, 1884, its contract with the defendant was duly recorded in Tarrant county, and on July 14, following, it filed with the clerk of the county court of that county a sworn bill-of-particulars of the labor, material, machinery, fixtures, and tools furnished by it and used in the construction of defendant's slaughter-house, accompanied with a description of the land upon which the building was situated, which was also duly recorded; and that on August 4, 1884, it delivered to the defendant a copy of the

attested account, together with a description of the land. The intervenor also alleged the insolvency of the defendant, and it claimed in its petition a mechanic's, furnisher's, and laborer's lien on the property and premises, including the machinery situated in Tarrant county, as security for its debt.

On November 29, 1884, the court rendered judgment against the defendant in favor of Ayers & Cannon and A. Levi & Co., respectively, for the amounts due them, and, at the same time, confirmed the appointment, previously made, of Pridham as receiver, and likewise vested him with the powers of an auditor, with directions to audit all claims against the defendant, except such as were secured by lien on the property, and to report his action to the court at its next term. The court also directed, in its decree, that the defendant should at once transfer, convey and deliver to the receiver all of its property and effects, and that the latter should advertise and sell the same.

On May 29, 1885, the appellants, Fagan and Osgood, obtained leave of the court to intervene in the suit, and, on the same day, filed their petition of intervention, alleging that they were creditors of the defendant company, that their claim had been established before the auditor, and that they were interested in the legal and equitable distribution of the defendant's assets amongst its creditors, and interposing objections, by way of demurrer, to appellee's claim of lien on the defendant's property for the satisfaction of its debt, on the following grounds: First—Because the Boyle Ice Machine company is a private corporation, and the statute of Texas, relating to mechanic's liens, does not authorize or contemplate that the benefits thereof shall extend to corporations; Second—Because this suit had been commenced, and the appointment of the receiver had been made by the court, before the filing and recording of the Boyle Ice Machine company's contract, and its efforts to fix its lien was, therefore, ineffectual; and Third—Because the Boyle Ice Machine company claimed to have fixed its lien by recording the written contract, and also by recording an itemized account of the machinery and other articles furnished by it.

The machinery, material, etc., were sold and delivered at Chicago, in the state of Illinois, pursuant to the following written contract between the appellee and the Texas Continental Meat Co.:

"CHICAGO, ILL., Sept. 1, 1883.

*Messrs. The Texas Continental Meat Co., of Fort Worth and Victoria, Texas.*

GENTLEMEN:—We hereby offer to furnish you, free on board the

cars here, the following refrigerating machinery, boilers, pipes, etc., namely : One of our twenty-five-ton size refrigerating machines, complete in all its parts and details, including a steam boiler of ample size for furnishing steam required by the machine, complete with all castings, fittings and smoke stack ; also steam boiler feed pumps ; also furnishing all pipes, fittings, valves, hangers and bolts required for erecting, in the best manner, a system of cooling pipes in six meat chilling rooms, measuring each about sixteen feet wide by seventy feet long, by seventeen and a half feet high ; also furnishing the pipe-fittings required for main line connecting pipes between these rooms and the refrigerating machine ; also furnishing a steam pump of best make and ample size for circulating the cooling brine through the rooms to be cooled. The above described machinery and pipe work we guarantee capable, under proper conditions, of keeping these rooms at a temperature not higher than 40° Fahr., and of cooling off within these rooms, each twenty-four hours, as much as one hundred thousand pounds of slaughtered cattle to a temperature at least as low as 40° Fahr.

In addition to the above, we will also furnish, f. o. b., one of our fifteen-ton ice machines, complete in all its parts and details, and including a steam boiler of ample size for furnishing the steam required by said machine and boiler, being complete with all castings, fittings and smoke stack. The boiler feed pumps already mentioned shall be large enough to supply this second boiler with water also. This ice machine we guarantee capable of producing regularly in twenty-four hours operation at least thirty thousand pounds of good ice, when properly supplied and cared for. We will also furnish a steam pump of ample capacity for pumping the cooling water required by these machines from your wells close by the machine room. We guarantee that only first class machinery and labor shall enter into the construction of the whole of the above described work ; and that we shall ship it to you within two months from the date of this proposition, unless otherwise ordered by you. We will also send with these machines an experienced engineer who shall superintend the erection of them and instruct your engineers in their operation. The price we require for the whole of the above described machines, boilers, pumps, pipes, and services of our engineer is $40,000. Under the above propositions, you are required to provide suitable buildings and *foundations*, with anchor bolts for engines, pumps and tanks, to furnish the mechanics and laborers for the proper erection of the machinery in your packing house at Fort Worth, Texas, to pay for the ammonia and salt with which the machine is charged, and to pay

the price quoted as follows: $20,000 on shipment of machinery, $10,000 on completion and satisfactory operation, and note at same time for $10,000, payable three months thereafter.

Yours truly,

(Signed), Boyle Ice Machine Co.,

By David Boyle, Vice Pres.

We accept the above proposition in all its terms and conditions.

[Signed] Texas Continental Meat Co.,

By A. F. Higgs, President and Gen. Mangr."

On May 30, 1885, the cause came on for final hearing, and was tried by the court without a jury. The objections of Fagan & Osgood to the Boyle Ice Machine company's intervention were overruled, and judgment was rendered by the court in favor of the latter against the Texas Continental Meat company, for the sum of $21,539.29. The court also declared a lien on the defendant's slaughter-house property and premises, including the machinery, etc., situated at Fort Worth, in the county of Tarrant, in favor of the Boyle Ice Machine company, and directed the receiver to pay and satisfy the amount adjudged to be due it, out of the proceeds of that property. The court likewise adjudged to the Boyle Ice Machine company the further sum of $750, and directed the same to be paid out of the general assets of the defendant. To this judgment Fagan & Osgood, alone, excepted, and the case is now here on their appeal.

The pleadings are lengthy, the decretal orders numerous, and the evidence voluminous, and, in the foregoing statement, only such portions thereof have been set forth as are thought to be necessary to a proper understanding of this appeal. The points made by the assignment of errors, and relied on for a reversal of the judgment, are apparent from the opinion. It may be well, however, to state that an objection to Fagan & Osgood's right to intervene in the suit and contest the Boyle Ice Machine company's claim of lien, under the statute, on the property of the defendant, was interposed by the appellee.

*Foard & Thompson*, for appellants, that the provisions of the law creating liens in favor of material men, mechanics, etc., do not inure to the benefit of corporations, but to that of individuals only, cited: Sec. 37, Gen. Provs. of Const. of 1876; Acts of 15th. Leg., of date August 7, 1876; R. S., arts. 3164, 3165; Priv. Corp., R. S. p. 95; Penal

Code, art. 24, p. 3; R. S. under the head of definitions; Phillips on Mech. Liens, 24; s. c., 55; Horan v. Frank, 51 Tex. 405; Phillips on Mech. Liens, 83.

On the proposition, that the machinery, materials, etc., having been sold and delivered beyond the limits of the state, no lien under the statute could attach, in favor of the appellees, on buildings and land within the state, of which the materials, machinery, etc., had become a part, they cited: Phillips on Mech. Liens, 58; Birmingham Iron F. v. Glen Cove, 78 N. Y. 30; DeWitt v. Burnett, 3 Barb., N. Y. 89; Boyce v. Grundy, 9 Peters, 275; Runk v. St. John, 29 Barb. 575.

They also cited the following authorities: Sec. 37, Gen. Provs. of Const. of 1876; R. S., arts. 3164, 3165; Phillips on Mech. Liens, 270, 273; Rose v. Perese, 29 Conn. 256; White v. Chaffin, 32 Ark. 68; Cohen v. Hagor, 30 Ark. 28; Phillips on Mech. Liens, secs. 170, 171, 174, as to what are and what are not buildings; R. S., arts. 3164, 3169, 3170; Phillips on Mech. Liens, 3, 21, 24; Collins v. Mott, 45 Mo. 100; Brady v. Anderson, 24 Ill. 110; Phillips on Mech. Liens, 55; Lee v. O'Brien, 54 Tex. 635; Pool v. Sanford, 52 Tex. 621; Ferguson v. Ashbell, 53 Tex. 245; Tinsley v. Boykin, 46 Tex. 592; Reese v. Corlew, 60 Tex. 71.

*A. M. Carter,* for appellee, on the proposition, that appellants could not intervene and contest appellee's claim of lien, cited: Hamlin v. Board of Supervisors, 30 La. Ann. 449.

That the fact that appellee is a corporation does not exclude it from the benefits of the mechanic's lien law, he cited: Sandvall v. Ford, 55 Iowa, 464; Phillips on Mech. Liens, p. 83, sec. 53.

That appellee could fix and secure its lien by recording its contract, notwithstanding the fact that a receiver had been appointed by the court, he cited: R. S., 3165; Huck v. Gaylord, 50 Tex. 580-583; Kerr on Receivers, 170, 171.

That the lien claimed by appellee is a valid lien under the statute, and was properly recognized by the court below, he cited: R. S., 3165, 3264, et seq.; Sinker, Davis & Co. v. Comparet, Tex. Law Rev., vol. 5, p. 184; Wait's Acts. and Def., vol. 3, 377; Phillips on Mech. Liens, 274.

ROBERTSON, ASSOCIATE JUSTICE.—The decree in the main case of Ayers & Cannon and others v. The Continental Meat company, appoints a receiver to take charge of the property of the defendant and convert it into money, and contemplates a distribution of the proceeds among the creditors of the company. There is no prayer of the

petition, or express provision in the decree, for a dissolution of the corporation, but its extinction is the necessary result of the consummation of what is done and proposed.  The effect of the decree is, therefore, to place the assets of the company in process of equitable administration.

In such administration, the usual practice is to ascertain the persons entitled to participation in the distribution of the fund, by the instrumentality of a master in chancery.  In this case the court appointed an auditor to perform this service as to general creditors, and, as to those asserting liens, reserved to itself the office of master.  The appellee belonged to the latter class, and, in the form of a petition of intervention, presented his claim to the court for adjudication.

Whether Fagan & Osgood had the right to appear and resist appellee's claim must depend upon the same principles which would decide their right if the claims were presented before a master.  The court's performance of this part for itself could not change these principles.

Who may attend before the master is determined upon the most enlightened and liberal principles of abstract justice.  If the fund being administered is not sufficient to pay all, each creditor or distributee is directly interested in the justice of every demand of a degree equal to, or greater than, his own.  Every claim which is to be paid before his, lessens the fund out of which he is to be paid, and every claim standing upon equal footing with his, lessens his distributive share.  Every creditor whose claim has been recognized or established in any of the modes pointed out by the decree, becomes a *quasi* party, and may resist, before the master, the allowance of any claim of a dignity equal to, or greater than, his own.  If not satisfied with the action of the master he may, upon leave as of course, except to the master's report, and have his objections to the obnoxious claim passed upon by the court; and we are not sure that he could not, under our laws, have the verdict of a jury upon disputed facts.  For full statement of the practice and proceedings before master upon the points considered, see Daniell's Ch., Pl. and Pr., pp. 1173, 1174, 1175, 1212, 1312, 1317.

In the original suit against the Continental Meat company its insolvency was averred, and, as it was a fact essential to the relief prayed, we may assume that it was proved in the trial which resulted in the decree confirming the appointment of a receiver.  The appellee averred that the stockholders owed the company enough to pay all its debts, but this averment was pertinent, only in the event its lien was denied, and, as the lien was established, this issue passed out of the case.  Fagan & Osgood averred that the stockholders owed the

company, but also that the latter was insolvent. In determing the right of Fagan & Osgood to intervene in the appellee's case, we think the insolvency of the common debtor was sufficiently averred and proved.

They thus brought themselves clearly within the rule already announced.

Their claim had been allowed by the auditor, they were distributees of a fund insufficient to pay all the demands against it, and the appellees were asserting a right over them to be first paid in full, and we think the court below properly allowed them to defend.

The proceeding instituted by the appellee had all the elements of an independent suit, and was entitled to its own final judgment. The decree entered, establishing the claim and lien, and providing for its payment, disposes of that suit, and must be held to be final. See Cowdry v. R. R. Co., 3 Otto 352.

Every claim presented against a fund in the hands of a receiver, if contested before the court, becomes, in effect, a suit against the receiver, which is ended by a final judgment allowing or rejecting the claim; and any party to the contest, dissatisfied with the result, may have the proceeding revised on appeal.

As the judgment appealed from was final, and the appellants were proper parties below, we are authorized to proceed to the consideration of the merits of the controversy.

Art. 3140 of the Revised Statutes, which provides that the word "person" shall include corporation, disposes of the first of appellant's objection to the appellee's lien. See also Martin v. State, 24 Tex. 68, and Bartee v. R. R. Co., 36 Tex. 649.

It is also contended that appellee could not *fix* and *secure* its lien after the receiver was appointed. The lien is the creature of the of the law; the registration provided for, preserves it. Huck v. Gaylord, 50 Tex. 580. The record of the contract, after the receiver was appointed, did not, therefore, newly encumber the property, but fixed and secured upon it an existing lien.

The machinery furnished became a part of the slaughter-house at Fort Worth. It was an essential part of the building itself. It could not be removed without damaging, if not destroying, the entire structure. It certainly constituted material for an improvement, within the meaning of our statute. Where the furnisher of such machinery, which is to become part of the realty, has been denied the lien, the courts have reached that result in construing the word *house* or *building*; and Mr. Phillips states that such decisions have been generally followed by amendments of the law—secs. 161, 167. Our statute uses

the phrase "house or improvement," and the latter term, in our opinion, embraces any permanent structure not under the designation of word *house*. The scope of the legislative purpose is seen in the fact that a lien is given for *fixtures* and *tools* furnished. Art. 3164.

The land on which the improvements were erected consisted of twenty-seven and one quarter acres. If it was in the country, of course, all of it was embraced in the lien—art. 3169. If it was in town, the proof sufficiently shows that the entire lot or tract was necessary to the profitable enjoyment of the property erected upon it. If the pleadings of appellee were not sufficiently specific in this particular, the point should have been made in the court below, and not, in the first instance, here.

The appellants' most material contention is, that, as the contract was made, the machinery delivered, and the title passed in Chicago, the lien provided by our statute could not attach. The case cited in support of this view, (Birmingham Iron F. *v.* Glen Cove Co., 78 N. Y. 30), is directly in point, and, if regarded as authority, is decisive of this appeal. The single principle, upon which that decision proceeds, is that the law of a state can have no extra-territorial effect. This principle is confined to no country, but is, in the nature of things, obviously and necessarily, both true and universal. A law intended to have such effect is void, not because it is unconstitutional, but because it lacks an essential element of a law—the sanction, the means of enforcement. It is not a law, because it is enacted without authority and may be disobeyed with impunity.

But does the principle apply to the case? The question made is not one of legislative intent, but of legislative power—not what was done; but, assuming that it was the purpose to create the lien in the given case, and that the language used was broad enough to compass the purpose, could such act be law?

The property to be affected, was land in New York, a subject exclusively in the jurisdiction of the laws of New York. The lien provided was such as could only be enforced by the decrees and process of New York courts. The lien is evolved by the law from stated facts. The law has attempted to prescribe the effect, *in New York*, of a combination of facts, some of which transpired in Connecticut.

The facts, of which the law begets the lien, are: 1—the furnishing of materials on credit; 2—the agreement, tacit or expressed, that they shall be used in the erection of a particular improvement; 3—the erection of the improvement, and, where it is held, as it is predicted it will be in New York, (Kimland on Mech. Liens, sec. 95) that the materials must actually form part of the structure for which they are

supplied; 4—the use of the materials in the structure. The contract was made in Connecticut and the goods were there delivered, but the improvement was erected in New York and the material was there used.

In Illinois, where it is held that the building must be erected and the material be actually used in its construction, it is held, that the lien attaches, though the goods are delivered in St. Louis. The lien is consummated by the use of the material, and the law has no extra-territorial effect. Gaty *v.* Casy, 15 Ill. 189.

But, if the lien accrues when the material is furnished, to be used in a structure, whether they are so used or not, the effects of the law are still confined within state boundaries. In the one case, the use of the goods in the state, and in the other, the purpose to use them in the state, perfects the lien, but in both, the lien, its subject and the remedy upon it, the law's effect are precisely the same. The title to the material furnished passes as absolutely when delivered within as without the state. In neither case does any property of the furnisher enter the structure. The contract of the parties may reserve a lien on the material or the improvement, but the statutory lien springs from and requires no such germ. The facts upon which the latter lien grows, are, in themselves, sterile. Their producing quality is supplied by the law; their product, the lien, is on land in the state.

That one or all of the facts, from which the law evolves the lien, transpired beyond the limits of the state, cannot affect the validity of the law, which "spends its force" (Cooley on Const. Lim. 128) entirely within its territory. The effect of the law is wholly in the state, and we can see no objection to that effect being conditioned on a fact wherever it occurs, which transpires locally, but exists ubiquitously.

We conclude that the legislature may give a lien on land in the state, for the price of materials to be used in the erection of an improvement on the land, wherever the goods are purchased and delivered, whether the lien depends upon their actual use in the improvement, or is made to attach upon their delivery, with the purpose that they shall be so used.

Our statute does not, in terms, restrict the lien to cases in which the material is delivered or purchased in this state, but language is used broad enough to embrace purchases made beyond, as well as within, our limits. There is no reason why the manufacturer in Chicago should have a lien when he makes his contract and delivers the materials in Texas, and not have it when the sale and delivery takes place at his factory. The freight and risks of transportation constitute the

practical difference, and we find nothing in the statute making any distinction.

We find no error in the judgment, and it is accordingly affirmed.

AFFIRMED.

[Opinion delivered January 22, 1886.]