McHENRY et al. v. BANKERS' TRUST CO. et al. (No. 7438.)

(Court of Civil Appeals of Texas. Galveston. June 20, 1918. On Motion for Rehearing, Oct. 24, 1918.)

1. APPEAL AND ERROR ⪪843(2) — MOOT QUESTION — IRRIGATION — RECEIVERSHIP — WATER RIGHTS.

Where court, having appointed a receiver for irrigation company, determined water rates to be paid by landowners, the water rights of owners under contracts made with company was a moot question as to irrigation company, its president, trustee, receiver, and the holder of receiver's certificates, upon appeal by owners from judgment rendered on plea of intervention, alleging such rights, interposed after sale of irrigation plant under court's order.

2. WATERS AND WATER COURSES ⪪257(1) —IRRIGATION—WATER RATES—POWER OF COURT.

Where landowners intervened in receivership proceedings against irrigation company after sale of plant under order of court, and alleged water rights under contract with former owner, the court will not pass upon such question as against purchaser, where interveners did not plead an application to board of water engineers to fix water rates.

3. RECEIVERS ⪪133—IRRIGATION COMPANY —RIGHTS OF COURT—SALE OF PROPERTY.

Court, having appointed receiver for irrigation plant, has a right, upon its own motion, to sell and dispose of all assets and properties which it had taken and was administering through its receiver.

4. COURTS ⪪99(1)—LAW OF THE CASE.

Where landowners intervened in receivership proceedings against irrigation company, alleging collusion in the fixing of water rates, the court's adjudication that rates had been fixed without collusion precluded it from again passing on the question of such collusion upon intervener's second plea of intervention, interposed after sale of irrigation plant under orders of court.

5. RECEIVERS ⪪92—MANAGEMENT OF PROPERTY — IRRIGATION PLANT — POWERS OF COURT.

Court, having appointed receiver for irrigation plant, has the power of fixing the rates and conditions upon which the property should be conducted as a going concern.

6. JURY ⪪16(1)—RIGHT TO JURY TRIAL— RECEIVERSHIP PROCEEDINGS — IRRIGATION COMPANY—FIXING RATES.

Intervening landowners in receivership proceedings against an irrigation plant have no right to have their water rights determined by jury trial, the court which appointed receiver having right to fix rates, and landowners' remedy being appeal.

7. APPEAL AND ERROR ⪪101(2)—DECISIONS REVIEWABLE — ADJUDICATION OF WATER RIGHTS.

Where landowners intervened in receivership proceedings of irrigation plant, alleging water rights under contract with owner, and collusion in the fixing of rates under receiver, court's decree, holding that there was no collusion and that court had right to fix rates, was appealable.

On Motion for Rehearing.

8. PLEADING ⪪216(1) — DEMURRER — MATTERS CONSIDERED.

In passing upon general demurrer to a pleading, the court must look to and consider only such matters of fact as are alleged in such pleading.

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Receivership proceeding by Bankers' Trust Company, trustee, against the Mission Canal Company, in which S. A. McHenry and others intervened. Demurrer to interveners' second plea of intervention sustained, and from judgment against interveners upon their refusal to amend pleadings they appeal. Affirmed.

Townes & Vinson, of Houston, Geo. P. Brown, of Mission, and Don A. Bliss, of San Antonio, for appellants.

Andrews, Streetman, Burns & Logue and W. S. Bailey, all of Houston, for appellee Bankers' Trust Co.

T. J. Lawhon and Robt. A. John, both of Houston, for appellee Southern Trust Co.

D. W. Glasscock, of McAllen, in pro. per.

B. F. Louis, of Houston, for appellees United Irrigation Co. and John J. Conway.

LANE, J. We deem it necessary for an understanding of the opinion to follow to make the following statement:

Some time during or prior to the year 1909 one J. J. Conway had purchased and owned a large body of land situated in the county of Hidalgo, Tex., bordering on the Rio Grande river, for the purpose of establishing an irrigation plant thereon, and of selling out the land to purchasers in small tracts. After such purchase by him, Conway did sell many small tracts or subdivisions of said land to a number of persons; among whom were the appellants herein. In making sales of said small tracts Conway represented to the purchasers that they would get water rights with their respective tracts, entitling their tracts to be irrigated from the canal, then partly constructed and to be constructed, and that they would be furnished with water from said irrigation plant to irrigate their lands at the price of $1 per acre for each watering. At some stage in the proceedings one James W. Hoit became associated with Conway in said enterprise. The exact time when this association began is not shown by the record. During the year 1909 the enterprise became heavily indebted, and to relieve the same a loan in the sum of $170,000 was procured from one F. H. Wellcome, a resident of the state of Minnesota; and the said Conway and Hoit, and Emma L. Conway, the wife of said John J. Conway, executed and delivered to the said F. H. Wellcome, as trustee, a certain deed of trust for the purpose of securing certain bonds to be executed by the said Conway and wife and Hoit for said indebtedness, which bonds were to bear interest from date at the rate of 6 per cent. per annum, with interest coupons attached, in which said deed of trust the said Conway and wife and Hoit conveyed to the said trustee all their right, title, and interest in and to all

⪪For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of said land, with certain exceptions, and also all their right, title, and interest to all water rights granted and to be granted, all buildings, flumes, trestleworks, ditches, laterals, engines, pumps, and machinery of every kind and description used upon or in connection with the said irrigation plant then located and being extended upon said land, as the same then stood, and as the same should be extended during the existence of such trust deed; and they further assigned to the said trustee all choses in action, including notes, mortgages, contracts for deeds, and conveyances, reserving liens and all other bills receivable then owned by said grantors and received by them from the sales of parts of said lands. Said deed of trust contained a number of covenants not deemed material to any issue involved in this case. Said trust deed was executed on November 1, 1909.

Thereafter the said Conway and Hoit, together with one W. E. Pope, procured a charter from the state of Texas, incorporating what is called the Mission Land Improvement Company, with a capital stock of $300,-000, claimed to be fully paid up. Conway and Hoit owned practically all of said capital stock, the said Pope having merely a nominal interest in the same, having been made a member of those incorporating said company in order to have the number of incorporators required by the laws of the state of Texas. The purposes for which said corporation was formed, as stated in its said charter, were acquiring, constructing, owning, and operating an irrigation system for agricultural and other purposes for the irrigation of its own lands and the land contiguous to its irrigation canals and lands, for navigation, milling, mining, stock-raising, and for supplying of such persons with water, as it might determine, for remuneration paid to it.

The effect of the foregoing transactions was that a large portion of the properties owned by Conway and associates was conveyed to the Mission Land Improvement Company, particularly all the notes that had been executed and delivered to such owners for parts of the purchase money of the various tracts sold by them.

On the 28th day of December, 1909, the Mission Land Improvement Company assigned all of said notes over to F. H. Wellcome as trustee. Prior to the incorporation of the Mission Land Improvement Company the owners of the irrigation plant recognized the rights of the purchasers of said small tracts to have their lands irrigated at $1 per acre for each watering, and did so irrigate said land at said price, and after the incorporation of said company, and after said properties had passed into its hands, it continued to recognize such rights of such purchasers. In operating its irrigation plant, and in the further conduct of its business, the Mission Land Improvement Company incurred a debt

206 S.W.—36

of over $300,000, which included a part of the purchase price of the land it owned and the sum due to Wellcome. On the 18th day of March, 1910, said Mission Land Improvement Company conveyed to the Mission Canal Company, a corporation organized and chartered through the efforts of Conway and his associates, the said irrigation system, together with all water rights and water contracts owned by it, for a recited consideration of $331,422. For the purpose of paying the purchase price for said properties the Mission Canal Company issued bonds in the sum of $331,422, which finally passed into the hands of and became the property of the Bankers' Trust Company, one of the appellees herein.

On the 15th day of March, 1911, the Mission Land Improvement Company conveyed to J. J. Conway all the land owned by it on that date for a recited consideration of $400,-000, and upon the same date Conway executed and delivered to the Bankers' Trust Company, as trustee, a certain deed of trust upon all of said lands for the purpose of securing certain bonds amounting to the total sum of $480,000, and thereafter had F. H. Wellcome to assign to the Bankers' Trust Company all right, title, and interest of Wellcome in and to said properties by virtue of the trust deed theretofore executed and delivered to him by J. J. Conway and others. Thus the Bankers' Trust Company became the owner of a large amount of bonds of the Mission Canal Company, and also became trustee of all of the properties of said company under the aforementioned deed of trust.

On the 16th day of August, 1912, the Bankers' Trust Company, as trustee, filed its petition in the Sixty-First district court of Harris county, Tex., and, after reciting its trusteeship, the indebtedness of the Canal Company, and its inability to pay the same, much of which was past due, further alleged:

"That the defendant company is an irrigation corporation, and is the owner of and is now operating a large irrigation canal in said Hidalgo county, Tex.; that about 25,000 acres of land lie under and adjacent to the canals and laterals of said defendant company, and the owners thereof hold contracts entitling them to water for said lands; that of this acreage about 15,000 acres are now under cultivation by a large number of farmers and croppers, who now have crops consisting of corn, cotton, cane, feedstuffs, vegetables, and other crops, depending upon the supply of water from said canal; that said lands are in the dry and arid district of this state, where the natural rainfall is insufficient to make or save agricultural crops, and unless water is furnished, and continued to be furnished, from said canal, each and all of the said crops will be lost and destroyed, and the large number of landowners and farmers will be greatly damaged, and great financial loss and injury will follow; that the number of said landowners, farmers, tenants, and persons who are dependent upon the operations and continued operation of said canal is so large as to constitute a public interest in the continued operation of said canal.

"Plaintiff is informed and believes, and alleges upon information and belief of affiant, that the defendant company is without funds, and unable to obtain funds, to further operate its said canal, and is preparing to, and necessarily must, close down the said canal and discontinue the operation thereof for lack of sufficient funds; that if said canal be closed, and the operation thereof discontinued, even for a short time, not only will great loss and damage be caused to the landowners and farmers, as above stated, but the properties of said company will greatly depreciate in value, and the lien and security of the bonds above described be greatly impaired.

"Plaintiff is informed, and alleges upon information and belief of affiant, that many of the farmers, tenants, and landowners are indebted to said canal company for water furnished and supplied to their lands, and have failed and refused, and do now fail and refuse, to pay therefor, and the defendant company has failed, and does now fail, to enforce or secure the collection thereof; that many persons thus indebted to said company are now removing their crops and effects from the said lands, and from said community and county, and, unless prompt action is had, much of the indebtedness due and owing to the said company will be lost, and it is necessary for the interest of all parties concerned that prompt steps be taken to enforce the collection of these accounts; that, by reason of the facts and conditions above set forth, a grave and immediate emergency exists, requiring the appointment of a receiver by this honorable court to take the said properties into possession and to continue the operation thereof, and to collect and enforce the collection of the water rentals and moneys due to said company, and to preserve the said properties and hold the value thereof intact as a going concern; that by reason of the premises this plaintiff, in its capacity as substitute trustee as aforesaid, is entitled to the interposition of this honorable court, and to have a receiver appointed to administer the said properties as above stated, and subject to such orders and directions as this court may enter in the premises.

"Plaintiff further shows that, as appears from the copy of said deed of trust attached hereto, it is provided therein that the defendant company will bear, pay, and discharge any and all expenses, costs, and charges legally and properly incurred in the full administration of this trust by said trustee, and that all such proper expenses, costs, and charges shall be a special charge upon the properties and premises, rights and appurtenances, therein described, with priority of payment to the bonds and interest coupons secured thereby; that in the proper discharge of the duties incumbent upon this plaintiff as such trustee, and for the institution of these proceedings, it has been and is necessary for this plaintiff to employ attorneys, and it has employed the legal firm of Andrews, Ball & Streetman to represent and act for it in the premises, and plaintiff is entitled to have a reasonable allowance made, in such an amount as to this court may seem proper, for the payment of the fees of its said attorneys in .this behalf, and, further, to have a reasonable allowance made to it in recompense for its services as such substitute trustee, and covering its expenses and disbursements in this behalf.

"Wherefore, premises considered, plaintiff prays that defendant be cited, according to law, to answer this petition; that upon presentation hereof a receiver be appointed by this court to take said properties into his possession, and to care for and preserve the same, and to collect the outstanding indebtedness owing to said defendant company, and that said receiver be clothed with power to operate and continue the operation of the irrigation properties of the defendant, and with such other powers and duties as to this court may seem proper; that upon final hearing hereof plaintiff have judgment establishing the indebtedness, principal and interest, due upon the aforesaid bonds, and for the recovery thereof, and establishing and foreclosing its lien as aforesaid, and, further, for its reasonable attorney's fees, and its reasonable fees for its services as trustee, with allowance for its expenses and disbursements in this behalf, together with such other and different relief, both general and special, as it may be entitled in the premises."

By authority of a resolution duly passed by the board of directors of the canal company, to wit, J. J. Conway, president, C. W. Frick, secretary and treasurer, Albert Sammons, M. F. Armstrong, and T. M. Melden, the president, J. J. Conway, waived the issuance and service of citation in said suit, and entered appearance for said company.

On the same day, upon a hearing of the plaintiffs' petition, the trial judge entered the following order:

"No. 56169.   The Bankers' Trust Company, Trustee, vs. The Mission Canal Company.

"In Chambers.   August 16th, 1912.

"The foregoing petition having been duly filed and presented to me in chambers on this date, and duly considered, it is ordered that J. L. Malone of Hidalgo county, Texas, be, and is hereby, appointed as receiver for the properties and estate of the defendant corporation, the Mission Canal Company, as prayed for in the foregoing petition; and upon entering into bond in the sum of ten thousand dollars (10,-000.00), to be approved by the clerk of this court, and taking the oath of office as provided by law, the said receiver shall take into his possession all the properties of the defendant company, wheresoever same may be situated, and hold and preserve same, subject to the further orders of this court in that behalf.  The said receiver is further authorized and directed to collect all moneys, accounts, and indebtedness due and owing to said defendant company, and to ask, demand, and, if necessary, bring, suits to enforce the collection thereof.

"Further, the said receiver is authorized and directed to operate, and continue to operate, the irrigation canal, and to furnish water to consumers, and to carry on the business of the defendant company, subject to the further order and direction of this court in that behalf.

"The said receiver shall file an inventory of the said property as soon as possible."

J. L. Malone duly qualified as such receiver, and thereafter, on September 12, 1912, said receiver filed an inventory as directed by the court, and a report of the condition of the properties placed in his hands as such receiver, made recommendations as to its needs, and requested the court to instruct him how to proceed in the management of said properties and in operating said irrigation plant.

On the 1st day of October, 1912, the court entered an order wherein we find the following recital:

"In reference to the operation by the receiver of the irrigated system of the defendant company, and to the amount and basis for the charges to be made by the receiver for supplying water therefrom, it appearing to the court that the defendant company is mutual in character, in that its capital stock is largely held by the owners of the lands lying under its irrigation

system, one share of stock for each one acre of land respectively; that the company by resolution of its stockholders adopted at their last meeting held on December 18, 1911, provided and placed its operations on a basis whereby, in substance, the owners or parties in possession of the lands under its irrigation system, and entitled to use water therefrom, should, beginning with January 1, 1912, pay an annual rate or charge for the right to use water, and to be paid whether any water be actually taken or not, in the amount of $4.00 per acre per annum, payable $2.00 thereof in advance on the first day of January, 1912, and the remaining $2.00 on or before October 1, 1912; the said flat rate to entitle such landowners or water-users to four irrigations without extra charge therefor; and, if more than four irrigations be used during the year, that the landowners and water-users should pay $1.00 per acre for each irrigation in excess of the four allowed for such flat rate; and it further appearing to the court that the company has operated since the first day of January, 1912, and make all charges upon its books and collections for water upon such basis; that the company had thus operated for the period elapsed in 1912, upon an annual or yearly basis for its water charge, using the calendar year therefor, and that at the time of the appointment of the receiver herein the annual period of one year had not elapsed; that, if such basis or system of charges should be changed or discontinued at this date, great confusion would result, and it would be difficult, if not impracticable, to determine the exact or proper amount payable to the estate of the defendant company, by or to make an equitable adjustment with each individual landowner or water-user for that part of the annual period elapsed, or water used prior to the appointment of the receiver herein; it further appearing to the court that such basis or a system of charges was placed in operation by the stockholders as aforesaid, who were landowners, water-users, and holders of water contracts from the defendant company, and that the greater number thereof have consented to and acquiesced therein; and it further appearing to the court that all landowners and users of water from the irrigation system of the defendant company, while operated by the receiver herein, should pay a uniform rate or charge, and receive like treatment, without favor or discrimination of any character; and for these and other reasons, it appearing to the court as being to the best interest of the estate of the defendant company and of all concerned that such basis or system of charges should continue in effect without material change during the remainder of the year 1912 until the annual period covered thereby is completed."

By this order the receiver was directed, first, to continue to operate and furnish water under the basis or system of charges mentioned above, so as to complete the annual period of the year 1912; second, to furnish water to all land lying under and capable of being watered from the system, in the event and only when the owners or parties in possession of said lands shall first comply with all the terms and provisions set out in said order; third, that a flat rate of $4 per acre for every acre capable of being irrigated from the system as then constructed be charged against the owners of the respective tracts of lands, said charges to be paid as follows: $2 as of January 1, 1912, and the remaining $2 on October 1, 1912, and that no water should be furnished unless said flat rate was paid; fourth, that if the owner of any of said lands shall pay said flat rate, and has

not received the amount of water due for the year 1912, the receiver shall supply such deficiency, if any, but such water for 1912 shall be supplied during the year 1912 and not thereafter; fifth, that the receiver shall adjust and settle with said landowners or holders the number of acres of lands of the latter, in any particular tract or subdivision, capable of being watered from the irrigation system of the defendant company as now constructed, and on which the above charges shall be paid, and to except from such acreage any portion thereof used or occupied by the main canals or laterals of the defendant company, or by public roads, or where the elevation is too high or is for any other reason incapable of being watered from the irrigation system of the defendant company, and the receiver is authorized to employ an engineer and such assistance as may be necessary or proper to obtain the data and information for this purpose; and, sixth, the receiver is authorized, in his discretion, to refuse to furnish water to any land or holder or water-user who shall fail or refuse to prepare his land, field laterals, and ditches in a proper manner, and to keep same in proper condition, for the economical and proper handling and using of water to the satisfaction of the receiver herein, and as the receiver and his engineer may direct in the premises. Further, the receiver is authorized in his discretion to refuse to furnish water to any land unless and until the field laterals and ditches therein be located, constructed, and maintained in a manner satisfactory to said receiver or his engineer for the proper and economical handling of such water.

There were other directions contained in said order not necessary to be mentioned here.

On the 14th day of January, 1913, upon a report and showing of the receiver, the court entered an order allowing the extension of said canal system so as to cover another body of land, and fixed another basis for water charge for the year 1913.

On the 26th day of May, 1914, S. A. McHenry and 25 others, appellants herein, intervened in said receivership, and in their original petition they allege, among other things, that after J. J. Conway and his associates became the owners of the land contiguous to said irrigation system, then only partially completed, they and each of them purchased their respective tracts of land from said Conway and associates at high prices, upon the representation that they would be entitled to have their lands irrigated at $1 per acre for each watering. They allege that certain portions of their respective tracts were in a state of cultivation; that the appointment of Malone as receiver of the canal properties was procured by fraud practiced upon the court by J. J. Conway and the Bankers' Trust Company for the purpose of improving said properties at

the expense of interveners; that the basis fixed by the court in its instructions to its receiver for furnishing water was oppressive and unjust, and that the rates charged for water were excessive and unreasonable; they allege the issuance of the bonds, hereinbefore mentioned, by the Mission Canal Company, and the fact that they became the property of the Bankers' Trust Company. They denied that they owned stock in the canal corporation, as alleged by Receiver Malone when applying for orders as such receiver. They allege that the receiver has at all times refused to irrigate their lands except upon the terms and conditions set forth in the instructions given him by the court; and, further, that since the appointment of the receiver, Conway, the Bankers' Trust Company and the receiver have colluded together, and by means of misrepresentations procured the court to make an order permitting the receiver to make a contract with the Southern Land & Water Company to water 16,000 acres of its land from said irrigation system, and that to do so it would become necessary to incur an expense far greater than the profits to be derived by reason of such extension of said irrigation system; and that if such extension is permitted the canal will be overtaxed, and it will not have sufficient water to irrigate all the land covered by said system.

Many other allegations are made, in a very lengthy petition, which we deem not necessary to mention here. The prayer of the interveners in part· is as follows:

"Wherefore these interveners pray the court to set aside said order permitting said receiver to make said contract. They show that the said receiver under said order has already made said contract with said owner of said 16,000-acre tract, and is now engaged, at a great expense, in constructing main canals and laterals over said 16,000-acre tract. Interveners pray that said Southern Land & Water Company, a corporation, be made a party to this suit by service on D. R. Swift, its principal, of Lake Charles, La., and that upon a hearing of this application the court make an order directing the said receiver to desist from said work, and directing him not to furnish any water for the purpose of irrigating said 16,000-acre tract from said irrigation plant.

"Interveners show to the court' that the time of the year has now come when they need the use of the water for· irrigating their lands in cultivation, and that they will not be able to make crops upon their lands without the use of such water.

"Premises considered, they pray that the said Conway and the said Bankers' Trust Company and the said receiver, Malone, be given notice of this plea in intervention, and that the same be set for hearing by the court for the earliest possible date consistent with due notice, and that upon such hearing the court set aside the said order heretofore made on ex parte application with reference to charges for water, and to make an order requiring the said receiver to let interveners have water for irrigating their lands and for domestic use at the rate of not exceeding one dollar per acre, according to their contract with the said Conway and the said Mission Land Improvement Company; or, if the court should find on such hearing that such rate prayed for by these interveners would not be just and equitable, then that the court make an order fixing such just and equitable rates to be charged against these interveners by the said receiver during the pendency of this suit for the. use of water for irrigating such of their lands as these interveners desire to irrigate."

After concluding the foregoing allegations and prayers, the interveners, McHenry and others, repeat their allegation of the procurement of the appointment of a receiver of the properties of the Mission Canal Company and the order fixing water rates by J. J. Conway and the Bankers' Trust Company by the practice of fraud upon the trial court. They further alleged that during the years 1913 and 1914 they had lands in cultivation for rent in anticipation that they would get water from the irrigation plant of said canal company necessary to irrigate their said lands at $1 per acre for each watering, but when they applied for water the receiver refused to allow them water unless they would pay him the rate fixed by the order of the court; that, upon their refusal to pay said fixed rates, the receiver refused to furnish them with water for said years, to their great damage; fixing said damage at $10 per acre for each and every acre they owned subject to irrigation for each of said years 1913 and 1914. They then prayed that the Mission Land Improvement Company and J. J. Conway be made parties to the suit, and that upon final hearing they have judgment as before prayed for, and also that each of them have judgment against . J. J. Conway and the Bankers' Trust Company for the damage alleged to have been suffered by them severally, for cost of suit, and for general relief.

On the 15th day of June, 1914, J. L. Malone, receiver, resigned, and on the same day D. W. Glasscock was appointed and qualified as receiver of said properties.

Glasscock, as such receiver, was ordered by the court to proceed with the conduct and management of said properties in accordance with the orders and under the supervision of the court. On the 22d day of July the court modified its former orders to the receiver, and again fixed a basis of water charges, and also in said orders directed the mode and manner of collecting such charges.

On the 8th day of March, 1915, appellees Bankers' Trust Company, J. J. Conway, and D. W. Glasscock filed answers to the allegations in interveners' petition, in which they severally specially denied that any such wrongs as alleged by interveners have been imposed upon interveners by them or by the court by reason of any connivance of theirs, or of either of them, and they join issue with interveners upon each of said allegations.. They specially deny that interveners or any of them had any such water contract as alleged by them, or that any such representations were made to them to induce them to purchase their said lands, as alleged by them. For further answer they averred, among other things, that it was the general intention and purpose of J. J. Con-

way, when he purchased and entered upon the large body of land upon which said canal system was later constructed, to have said large body of land irrigated by means of a co-operative or mutual canal system, and that Conway had openly stated his said purpose to the public generally, and especially to interveners, McHenry and others; that it was agreed and understood between said Conway and said interveners, and each of them, and those under whom they claim, that the latter, in entering upon such enterprise in its inception, would co-operate with said Conway, and would aid and assist in working out the then difficult problem of irrigating said lands, and that, whatever definite form the irrigation enterprise might eventually assume or be determined upon, they, and each of them, would pay their proportionate part, and would bear their equal proportion of the burdens thereof; and for further answer they averred that the water rates charged and exacted by the receiver were those fixed by the order of the court, and that such rates so fixed by the court, and the conditions imposed by the court in its orders to the receiver, were just and reasonable, and were as low and imposed as light a burden upon water-users under said canal system as were consonant with the public duty imposed upon said properties and the parties operating the same, and as would yield an income sufficient to maintain and operate said properties; that any rate fixed and enforced by the court lower than that so fixed would be confiscatory and in violation of the constitutional rights of the owners of said properties. Conway also pleaded the statute of limitation as follows:

"Further answering herein, the said Conway represents that the contracts declared upon by interveners, whereby they were to be furnished water for irrigating their lands and for domestic use at a rate not exceeding one dollar ($1.00) per acre, as alleged by interveners, if any such contracts there exist, which defendant does not admit, but denies, or same were breached by this defendant more than four years before the filing of this intervention, and the same is barred by the statute of limitation of this state, and both the two and four year statutes are here expressly pleaded in bar of interveners' right to recovery upon said contracts or for the breach thereof, all of which this defendant is ready to verify."

There were also many other averments in said answers not necessary to be here mentioned.

The substance of the prayer of the Bankers' Trust Company, J. J. Conway, and D. W. Glasscock was as follows:

"That said interveners, and each of them, take nothing by their plea in intervention herein, and that so far as any recovery is sought to be had or judgment procured against either, as trustee or individually, or otherwise, that they go hence without day and recover all their costs in this behalf incurred. Further, for affirmative relief, prays that in decree upon said intervention, and in the final decree herein, each and all the contracts, permanent water rights, rights, equities, claims, easements, and incumbrances

sought to be enforced and fixed by the said interveners and each of them, and now or heretofore asserted by the said interveners and each of them, as against the franchises and properties of the said irrigation system, and of the trust estate under administration in this cause, or against the owners or holders thereof, or those who may come into the ownership or possession thereof, be canceled and decreed to be of no force and effect, and that the cloud thereby cast upon the title of said franchises and properties, and upon each trust estate, be removed, and that said interveners and each of them, and all persons claiming or to claim under them, or either or any of them, be forever enjoined and restrained from asserting the same in any manner.

"Further, that upon final decree in this cause, and upon decree of foreclosure, an order of sale be entered in this cause, as prayed in the original petition herein, that all said franchises and properties be sold free and clear from all such contracts, claims, and rights as above mentioned, asserted by the said interveners and each of them.

"Further prays for all other and different relief, both general and special, to which they may be entitled, either in law or equity."

The intervention of interveners, appellants herein, came on for hearing before the court on the 8th day of March, 1915, with all the parties, plaintiff, defendants, and interveners before the court, and all the matters embraced in the application of interveners, and the answers of the Bankers' Trust Company, J. J. Conway, and D. W. Glasscock, including the prayer of said parties, were fully heard by the court, and upon such hearing the court rendered and caused to be entered the following decree:

"On the 8th day of March, A. D. 1915, came on to be heard before the court the application of S. A. McHenry and others, as set forth in the original petition in intervention of said S. A. McHenry et al., filed herein on May 26, 1914, for interlocutory order of this court modifying and changing the terms, provisions, and effect of the orders heretofore entered by this court, and now appearing upon the minutes thereof, fixing the rates to be charged for water, and conditions upon which water will be furnished by the receiver, pending final hearing, and during the period the properties and irrigation system of the defendant Mission Canal Company are being administered, maintained, and operated by the receiver under the direction of this court in this cause.

"At the same time came on to be heard before the court the objection of the receiver, and of the plaintiff Bankers' Trust Company, trustee, to any modification of the aforesaid orders of this court.

"Thereupon, evidence having been adduced before the court, and the hearing thereon continued from day to day until the 13th day of March, A. D. 1915, and the court having taken same under advisement until this 17th day of March, A. D. 1915;

"And the court having considered the evidence adduced, including the reports as filed by the receiver, and now appearing among the records of this cause, showing the financial status and condition of the trust estate herein, and the receipts and disbursements of the receiver in connection with the maintenance and operation of the said irrigation properties, and having heard the arguments of counsel thereon, and being advised in the premises;

"And it appearing to the court that in order to preserve the value of the properties of the defendant company, and in order to discharge the public duty owing by the irrigation system of the defendant company, it is necessary that said ir-

rigation system be both maintained and operated, and that if said properties are not operated, and if same are not maintained in condition to operate, the value of said properties will be greatly impaired and lessened, and serious and irreparable injury be caused the public and those dependent upon or having an interest in the continued operation of said properties;

"And it appearing to the court that said properties cannot be maintained and operated unless an assessment or charge is levied and collected against all lands lying under said irrigation system, and entitled to or claiming water right under said irrigation system, or the right to the use of the facilities of said system for the furnishing and supplying of water to such lands, and whether the said lands, or any part thereof, actually take and receive water or not, and that an assessment rate or charge of that character is just and reasonable;

"And it further appearing to the court that, in order to maintain and operate said properties, it is necessary, in addition to the charge above mentioned, that a further rate or charge be made or collected for all water actually furnished consumers, and that a charge of such character is just and reasonable;

"And it further appearing to the court that the amount of such charges, respectively, as heretofore fixed by the previous orders of this court, to wit, an assessment of four dollars ($4.00) per acre per annum, payable whether water is actually taken or not, and a further and additional charge of one dollar ($1.00) per acre per irrigation for all water actually furnished, are and have been, since the institution of this cause, necessary in order to meet the actual and necessary expense of maintenance and operation of said canal system (without including anything for interest on value or cost of the canal system properties), and are not unreasonably or unjustly high or onerous;

"And it further appearing to the court that, in order to maintain and operate said properties, it is necessary to require that all such assessments and charges which have accrued or become due and payable under the aforesaid orders of this court shall be first paid before any water is furnished to any lands thus in arrears, and that such requirement is just and reasonable;

"And it appearing to the court that the minimum charge of $5.00 for any acreage less than and up to and including five acres, and all the terms and provisions of the orders of this court entered herein on the 22d day of July, 1914, now appearing in volume 12, pages 130, et seq., of the minutes of this court, are not unjustly or unreasonably high or onerous;

"And it thus appearing to the court that the respective orders and decrees of this court, as heretofore entered herein, should be approved and reaffirmed, and that the rates and charges, terms, conditions, provisions, and instructions provided for in the order of this court entered herein on January 12, 1913, and now appearing in volume 10, pages 23 et seq., of the minutes of this court, and the further order entered herein on July 22, 1914, now appearing in volume 12, pages 130 et seq., of the minutes of this court, should be continued in full force and effect, save as hereinafter modified:

"Now, therefore, it is hereby ordered, adjudged, and decreed by the court as follows:

"First. That each and all the rates, charges, terms, provisions, and conditions, as set forth in the order of this court entered herein on the 14th day of January, A. D. 1913, and now appearing in volume 10, page 23 et seq., of the minutes of this court, and the further order and decree of this court entered herein on the 22d day of July, A. D. 1914, now appearing in volume 12, pages 130 et seq., of the minutes of this court, be, and the same are hereby, in all respects reaffirmed, and are made applicable for the years 1914 and 1915, and until the further orders of this court in this behalf, save the action of the receiver made with the knowledge and approval of this court in reducing the operation charges for water from $1.50 per acre per irrigation, beginning with and from and after January 1, 1914, be, and the same is hereby, approved, and said sum of $1.00 per acre of irrigation is fixed as the amount for such operation charge; and also save for the modification provided in second paragraph hereof.

"Second. That the receiver herein be, and is hereby, authorized, in his discretion and as he may deem best, subject to the approval of this court, to compromise and adjust all unpaid assessments, claims, and charges in favor of the defendant Mission Canal Company, accrued prior to January 1, 1912, and likewise, further, in his discretion, to furnish water to any lands on which said charges have accrued without first requiring payment of such charges accrued prior to January 1, 1912.

"Further, that the receiver herein be, and he is hereby, authorized, in his discretion and as he may deem best, subject to the approval of this court, to accept notes secured by liens in settlement of all assessments, rates, and charges accrued up to the present date, and upon the acceptance by said receiver of such notes secured by such liens to the satisfaction of said receiver, to furnish water to such lands without requiring that all accrued assessments and charges be first paid in cash.

"This order shall continue in full force and effect until the further order of this court in this behalf."

There was no appeal from the foregoing decree or order.

On the 15th day of October, 1915, Hon. H. J. Dannenbaum, judge of the Sixty-First district court of Harris county, in which the cause was originally filed, duly transferred the same to the Fifty-Fifth district court of said county, of which Hon. Wm. Masterson was the presiding judge.

On October 16, 1915, the Southern Trust Company, a corporation, by leave of the court, filed its plea of intervention in said cause, complaining of the Mission Canal Company and all other parties to the cause, including S. A. McHenry and his associate interveners, appellants herein. After formal allegations said plea detailed the issuance of five series of receiver's certificates by order of the court, aggregating $244,477.59, giving the dates and amounts of the various series, showing on its face the issuance of the last two series subsequent to the filing of appellants' plea of intervention in said cause. This intervention petition set out the properties which had been taken by the court in the hands of its receiver as being the same as that covered by the bonds and mortgages securing same upon which the original suit of Bankers' Trust Company was predicated. This plea of intervention, like all the numerous pleas in this record, is very lengthy, and we shall not here undertake to set it out in its entirety, but will content ourselves by stating so much of the substance thereof as will be sufficient to show its purpose.

It recites the orders of the court directing the receiver to issue and sell receiver's certificates. It sets forth the fact of the pur-

chase of all of said receiver's certificates so issued and sold by the Southern Trust Company and the Bankers' Trust Company. It recites that there exists a lien upon all of the properties of the Mission Canal Company of any and every nature and kind whatsoever, including "all water contracts made by and between the Mission Land Improvement Company for the Mission Canal Company, or by the Mission Canal Company for itself and the various owners of the various tracts of land shown on the map or plat of the La Lomela lands, consisting of about 27,000 acres." And also all interest in all such contracts as were made by and between J. J. Conway for the canal company and the various owners of the various tracts of said lands. And also all franchises, corporate rights, privileges, and equities belonging to, or in any way incident or pertaining to, said irrigation system. The prayer is for judgment for its debt, and for a foreclosure of its lien securing said receiver's certificates upon all of said properties, and for a sale thereof for the purpose of paying off the amount due it as evidenced by said certificates, free from all incumbrances, claims, demands, or liens of any and every kind whatsoever.

On the same day the court set said matter down for hearing on the 28th day of October, 1915.

On the same day the Bankers' Trust Company filed its answer to said intervention of the Southern Trust Company, joined in the allegations of said plea of intervention, and prayed for judgment for its debt against the Mission Canal Company, and for a foreclosure of its lien on all of the properties of said canal company, for sale of said properties, etc.

On the same day Receiver Glasscock answered, admitting the allegations of the Southern Trust Company and the Bankers' Trust Company to be true.

Due and timely notice of said intervention and of the time set for its hearing were served upon attorneys for appellants.

On said 28th day of October, 1915, Receiver Glasscock filed an inventory of all the property in his hands as such receiver belonging to the defendant Mission Canal Company.

Neither S. A. McHenry, nor any of his associate interveners, filed answer in said intervention of the Southern Trust Company, though duly served with notice of its pendency.

On the 28th day of October, 1915, the said court rendered a judgment on the said intervention of the Southern Trust Company. This judgment established and adjudicated the amounts of the receiver's certificates secured by a first and prior lien on all the property in the hands of the receiver, "paramount and superior to all liens, rights, titles, equities, claims, obligations, demands, easements, covenants, benefits, and privileges of any kind and character whatsoever of all parties to this cause and each of them," and foreclosed the lien as against all the parties to the cause, including appellants. And said judgment directed that the irrigation system of the defendant canal company be sold for the purpose of paying off the amount of said receiver's certificates; that the Southern Trust Company recover $95,221.13; and that the Bankers' Trust Company individually recover $165,658.66 of the amount of said certificates. Said judgment further ordered that the property of the Mission Canal Company in the hands of the receiver "be sold free from all liens, claims, demands, rights, easements, covenants, benefits, titles, equities, and privileges of each and all parties to this cause now owned, held, claimed, or asserted by the parties in this cause, and each of them; on or against the properties as above described and as herein foreclosed upon," but provided that said foreclosure sale should be made upon the express condition that the purchasers of said properties at such foreclosure sale should take, receive, and hold the same subject in all respects to, and chargeable with, the duties and obligations of the contracts thereinbefore particularly described in paragraph 9 in the decree, and entered into by and between the Mission Canal Company and its receiver on the one side, and Bankers' Trust Company, trustee, the Granjeno Development Company, and the Southern Land & Water Company, respectively, on the other side"; and the said D. W. Glasscock was appointed master commissioner to make the sale of said property at the door of the courthouse in the town of Edinburg, in the county of Hidalgo, on the first Tuesday of December, 1915, within legal hours of sale, after having given 20 days' notice of such sale, as is required by the law of the state regulating judicial sales, and by mailing printed copies of the notice of the sale clipped from the newspaper to the attorneys of record of the parties to this cause, and the said master commissioner was required to report such sale to the court for confirmation.

On the 8th day of December, 1915, the said D. W. Glasscock, as master commissioner, made a report to the court of the sale of said property to the Bankers' Trust Company and the Southern Trust Company acting through their trustees, W. S. Bailey and Travis Holland, and praying that the sale be confirmed; and on the same day the said Bankers' Trust Company and the Southern Trust Company filed a motion praying the court to confirm such sale. On the same day the court made an order setting down said motion for hearing on December 14, 1915, and required all parties to the suit to take notice of such hearing.

On the 14th day of December, 1915, the court made an order confirming said sale, and directed the master commissioner to con-

vey all of said property to W. S. Bailey and Travis Holland, trustees for the Bankers' Trust Company and the Southern Trust Company, upon compliance by them with the terms of their bid.

Said order of confirmation directed that the conveyance made by the said master commissioner to the said trustees for the Bankers' Trust Company and the Southern Trust Company—

"shall have the force and effect of divesting out of the canal company and the receiver thereof, and out of each and all the parties to this cause, all rights, titles, interests, obligations, covenants, and easements of every kind and character whatsoever in and to said property, and every part and parcel thereof, save and except that said W. S. Bailey and Travis Holland, trustees for Bankers' Trust Company and Southern Trust Company, the grantees under said conveyance, shall take, hold, and enjoy their said properties subject in all respects to, and chargeable with, the duties and obligations of the contracts heretofore made and entered into by and between the Mission Canal Company and its receiver on the one side, with the Bankers' Trust Company, Granjeno Development Company, and Southern Land & Water Company, respectively, on the other side."

No appeal was taken from such judgment or from any order of the court entered in said intervention proceedings.

After said properties had been conveyed to Bailey and Holland as such trustees, they conveyed the same to one J. H. Shary. Thereafter Shary conveyed said properties to the United Irrigation Company, a Texas corporation.

After the properties, etc., were so conveyed to the United Irrigation Company it took charge thereof, and has since such time managed, controlled, and conducted the same, without the supervision of the court or its receiver.

After said United Irrigation Company became the owner of said properties, and had been operating the irrigation system for about eight months, and after one term of court had intervened since it took possession of said properties, appellants did, on the 28th day of June, 1916, file their second amended plea of intervention, containing 40 paragraphs, together with several exhibits, covering about 35 typewritten pages. The allegations of the first 38 paragraphs of said second amended plea are almost identical with the original plea. In the additional paragraph the resignation of Malone and the subsequent appointment and qualification of Glasscock is alleged. Said amended plea also set forth the issuance and sale of all the receiver's certificates purchased and held by the Bankers' Trust Company. The substance of the plea of intervention of the Southern Trust Company was also set forth. They further alleged the rendition of the decree in the intervention of the Southern Trust Company. They alleged by said decree the trial court adjudged that the lien asserted by the Southern Trust Company and the Bankers' Trust Company against the properties of the Mission Canal Company were superior to— "all rights, title, interests, equities, claims, obligations, demands, easements, covenants, benefits, and privileges, of whatsoever character or kind, theretofore existing and then existing on said properties and franchises of said canal company, owned, held, claimed, or asserted by each and all of the parties to this cause; that by said decree it was ordered that all of said properties be sold free from all liens, claims, demands, rights, easements, covenants, benefits, titles, equities, and privileges then owned, held, claimed, or asserted by any of the parties to said cause."

They then alleged the sale of said properties by order of the court, the confirmation of such sale by the court, and the execution of the conveyances, conveying said properties, etc., to Bailey and Holland, trustees for the Bankers' Trust Company and Southern Trust Company and the subsequent conveyance of the same to the United Irrigation Company, and that the principal office of the latter company was in the town of Mission, in Hidalgo county, Tex. They alleged that all the parties adverse to them, including the United Irrigation Company, had notice and knowledge of appellants' rights. They alleged that the United Irrigation Company was under the legal obligation to furnish them with water to irrigate their lands at reasonable rates, but that said company was refusing to furnish such water unless appellants would first pay the charges which had theretofore been wrongfully charged against them, and unless appellants would execute a contract to pay said company in the future a flat rate of $4 per acre on all their lands subject to irrigation, which appellants had refused to do because said demands were unreasonable. They then prayed for judgment against J. J. Conway, the Mission Canal Company, the Receiver, and the Bankers' Trust Company for their alleged damages; that the decree entered in the intervention of the Southern Trust Company be amended and modified so as to recognize the rights of appellants; that the demands of the United Irrigation Company be adjudged unreasonable, and that said company be required to furnish appellants with water at reasonable rates and under reasonable regulations.

On the 2d day of October, 1916, appellants filed a supplemental plea, wherein they alleged, among other things, that it is true that upon a hearing of their original plea of intervention the court refused to grant the relief prayed for therein, and that the court did reaffirm all the orders that he had theretofore made fixing water rates generally; that said order of reaffirmance had been made by the judge of said court on the procurement of the Bankers' Trust Company, J. J. Conway, and the Mission Canal Company; that said order had been made by the court, or judge rather, in violation of law, and without any powers to make the same; that in said original plea, which had been

heard by the court, they complained of the same wrongful acts of the Bankers' Trust Company, J. J. Conway, and the Mission Canal Company as they now complain of; and that they now seek to recover from said parties the same damages as they sought to recover in said original intervention.

The United Irrigation Company answered by general demurrer, and by special exceptions to appellants' amended plea of intervention, as follows:

"This defendant specially excepts to all the allegations contained in said intervention which undertakes to set up facts as a basis for this court's order fixing the water rates with this defendant, and which seeks this court's action in such regard, because under the laws of this state this court is without authority or jurisdiction to enter such orders; because, further, such plea of intervention fails to set up facts showing that such interveners had heretofore applied to the board of water engineers of this state, by application as provided in the statutes, to have such water rates fixed, and of this exception this defendant prays judgment of the court."

"This defendant specially excepts to said intervention and all that part thereof which purports to allege the condition, topography, and situation of the lands, the division of said land into several lifts, the plan and method of irrigation of said lands, and the factors which affect same, and as to what are reasonable charges for water for irrigating lands on the said respective lifts, and to all that part of said intervention which seeks to have the court make an order fixing rates to be charged interveners, etc., because insufficient, in that it appears from said pleading that the only contracts alleged by interveners are that interveners 'were to be furnished with sufficient water to irrigate such of their lands as they desired to irrigate at the rate of $1.00 per acre for each watering,' and interveners do not allege any contracts, and do not allege or show any facts upon which to predicate any contract or right to be furnished with water at reasonable rates; and no facts are alleged sufficient to entitle interveners to have this court fix or determine reasonable rates for water to be furnished to them, because interveners do not allege or show any facts to predicate their claim that they are entitled to receive or use water from canals and irrigation system herein concerned, in that they do not allege or show that those controlling such water have a supply not contracted to others available for interveners' use and fail or refuse to supply such water to interveners, and interveners do not allege and show that they are willing and able to pay a just and reasonable price therefor; and because said intervention does not contain any or all of the prerequisites, and does not constitute a process in accordance with the statutes of this state for the fixing of reasonable rates for water charges, and fails to show that they have complied with the prerequisites required by law of making due application to the board of water engineers to fix such rates; and because it appears from said intervention that, if interveners fail to establish and recover upon the alleged contracts to be furnished with water for such of their lands as they desire to irrigate, then interveners are not entitled, and no facts are alleged or shown to entitle them, to any other or different relief, or to be furnished with water at reasonable rates, or to have this court make or determine any other contracts than the one alleged."

"The defendant further specially excepts to all that part of said intervention beginning with paragraph 37, and continuing to and through the end of said intervention, wherein same undertake to set up allegations as a basis for a modification or amendment of the decree heretofore made by this court, because it appears from said pleading that interveners herein were each and all of them parties to this suit at the time of the orders and decrees heretofore made in this cause by this honorable court under and by virtue of which the properties now owned by this defendant were acquired by it, and it appears from the records of this court and said pleading of interveners that the said interveners had full notice and knowledge of the sale of the properties acquired by this defendant, and of the report of sale, of the hearing thereon, and the confirmation thereof, and that, without objection or exception on the part of any interveners so possessed of such knowledge and notice, this defendant was permitted to acquire said property, and no facts are alleged on the part of said interveners as ground or reason why they and each of them should be held to be absolutely barred and estopped from attacking or asserting any rights as against said orders and decree."

Receiver D. W. Glasscock answered by general demurrer and by special exceptions as follows:

"Your receiver further specially excepts to all that part of said amended plea wherein damages are sought to be recovered against your receiver and his codefendants because insufficient, as follows:

"(a) All allegations seeking to predicate such damages are too vague, general, and indefinite; are conclusions of the pleader; fail to show or describe the lands claimed to be owned by interveners, or the amounts susceptible of irrigation, or the amount that was or is or can be in cultivation, or the acreage, kind, or character of crops thereon, the cost of planting, cultivating, harvesting, and marketing such crops, and what such crops would reasonably have produced; the reasonable cash market value of such crops, and what interveners would have obtained for such crops; fail to show by direct averment any such facts, or the facts relied upon to be shown by an exhibit, in that such averment cannot be supplied by exhibits; and, further, no such exhibits as alleged are or have ever been attached to such pleadings and are not now attached thereto.

"(b) It appears that all acts of your receiver complained of, and for which damages are sought, were done by him in obedience to express orders and directions of this court, and in legal effect constitute the acts of this court, not of your receiver.

"(c) It appears that any recovery of the damages alleged against your receiver and his codefendant must depend upon the allegations that said acts, orders, and decrees of this court were improvident and collusively obtained; and it expressly appears from the order made and entered in this cause by the 61st judicial district court on March 8, 1915, duly recorded in the minutes of said court in vol. 12, page 633, that said court then passed upon and determined all said allegations, and the propriety and validity of all said acts, orders, and decrees of this court, and of this receiver in pursuance thereto; that said decree of March 8, 1915, was made and entered by said court at a former term of said court long since expired, upon full hearing, in which interveners participated; that no appeal was had by interveners therefrom, and by reason thereof all said questions are now res adjudicata.

"(d) And that in no event can interveners complain of the orders, decrees, and acts of this court and its receiver in said respects, for that interveners have voluntarily intervened in this receivership and invoked the affirmative aid of this court therein.

"(e) It appears from said amended plea that all said damages, if any, and interveners' cause of action therefor, if any, accrued more than

two years prior to the filing of said amended plea of interveners wherein for the first time recovery therefor was, or is, sought against your receiver, and hence that same is barred by the statutes of limitation."

The Bankers' Trust Company and J. J. Conway answered by general demurrer and by special exceptions, as follows:

"Specially excepting to paragraphs 28 to 36, both inclusive, of said plea of intervention, said trust company says that same, and each and all the allegations therein contained, are irrelevant and immaterial, and all the allegations therein made have been heretofore passed upon and determined by the 61st judicial district court of Harris county, in which court this cause was then pending, and from which this cause was subsequently transferred to this court, as appears by judgment and decree of said court made and entered upon the original intervention filed by these interveners herein on May 26, 1914, which judgment was entered on March 8, 1915, and now appears in the minutes of said 61st judicial district court of Harris county, Texas, in vol. 12, page 633, to which said decree reference is here made for all purposes.

"Further specially excepting to paragraphs 27 to 36, both inclusive, of said plea of intervention, wherein it is alleged in substance that this trust company and its codefendants, John J. Conway and Mission Canal Company, conspired and colluded together and improperly secured the appointment of a receiver herein, and in substance alleging that said receivership was improperly procured, and that a fraud was perpetrated upon the court in the manner therein alleged, said trust company shows to the court that said allegations are irrelevant and immaterial, and that the matters and things therein alleged cannot now be pleaded and urged by said interveners, or any of them, for the reason that, as appears from their original intervention filed in this cause on May 26, 1914, said interveners and each of them voluntarily came into and intervened in said receivership, and submitted themselves to the jurisdiction of this court, and invoked the aid of this court as therein shown, and it further appears from the records of this cause that no motion or action of any sort was ever taken by said interveners, or any of them, to vacate said receivership, and for the reason that it further appears from the order made and entered in this cause by the 61st judicial district court on March 8, 1915, duly recorded in the minutes of said court in vol. 12, page 633, said court then passed upon and determined the question of the validity of the orders and decrees under and by virtue of which said receiver was acting when he declined to furnish water to said interveners, and each of them, for the irrigation of their said crops, except upon compliance by said interveners with the terms and conditions of said orders as fixed by said court, and said court in said decree, after full hearing thereon, determined that said orders were properly entered, and reaffirmed and directed said receiver to carry out and enforce same as against these interveners and each of them.

"Specially excepting to paragraph 36 of said plea of intervention wherein interveners seek to recover against this trust company for damages by reason of the alleged failure and refusal of the receiver herein to furnish water for the irrigation of their lands to said interveners, and each of them, as therein alleged, for the reason that it appears from said petition that in so refusing to furnish water to said interveners, and each of them, the said receiver was carrying out and acting in obedience to the orders and decrees made and entered in that regard by the 61st judicial district court of Harris county, Texas, in which this cause was then pending."

The Southern Trust Company answered by general demurrer, and by adopting special exception "W" of the Bankers' Trust Company, and by adopting special exceptions 3, 12, and 29 of the United Irrigation Company, hereinbefore set out, as its own.

There were matters embraced in the foregoing answers unnecessary to be here mentioned, in view of the disposition of the cause made by the trial court.

The plea of intervention of S. A. McHenry and his 25 associate interveners was thereafter called for hearing and disposition, and upon such hearing the court sustained each of the special exceptions of the several defendants as herein set out; whereupon the interveners, McHenry and his associate interveners, declined to amend their pleadings, and the court thereupon sustained the general demurrer of all of said parties, and rendered judgment decreeing that said interveners take nothing by their plea of intervention against John J. Conway, Bankers' Trust Company, Southern Trust Company, or D. W. Glasscock, and that they go hence without day, and recover all costs incurred by reason of said intervention of McHenry and his associate interveners.

There were further orders entered in said decree, the mention of which is not necessary for the purposes of this opinion.

From this judgment S. A. McHenry and his cointerveners have appealed.

The substance of the 40 assignments of error in appellants' brief is that the court erred severally in sustaining the various special exceptions of the several defendants to their plea of intervention, and in finally sustaining the general demurrer of said defendants upon the refusal of interveners to amend their said plea, and in rendering judgment in favor of said defendants.

It is apparent, from what has been said in the foregoing statement, that the proceedings in this cause are exceedingly voluminous, and appellants have filed in this court a brief containing 40 assignments of error. We deem it unnecessary to undertake to consider and discuss seriatim the numerous assignments presented in appellants' brief, many of which, we think, present practically the same question in varying forms, but we shall content ourselves by a general résumé of the whole case in such manner as to dispose of all the assignments presented. It is our opinion that the real material issues which we are called upon to determine are but few, which we think are ably and clearly discussed and covered by suggestions of appellees in their brief, which we here adopt as our conclusions, as follows:

It appears from the record, as set out in the preliminary statement, that after this receivership suit was instituted, and while the properties embracing the entire irrigation system and all the water rights in connection therewith were in the hands of the

receiver, duly qualified, and while the court was operating such irrigation system, through its receiver, the appellants, of their own volition, became parties to this suit, and invoked the aid of the court concerning certain alleged rights claimed by them in the properties being operated by the court, and thereby sought to avail themselves of the benefits afforded by the operation of the properties by the court.

It appears from the said preliminary statement that, at the time the appellants became parties to the proceedings, certain receiver's certificates had been issued for the purpose of enabling the properties of the canal system to be operated, which certificates were given a first and prior lien on all the properties in the hands of the receiver and such as might subsequently come into his possession.

Such statement further shows that subsequent to the entrance of appellants into this cause, they put in operation the machinery of the court by a hearing invoked by them for the purpose of determining the reasonableness of rates which the court had theretofore fixed for the operation of the properties, and striking at the very heart of the receivership by attacking the fairness of the appointment, the orders fixing rates, and the right to fix rates at all, by reason of alleged fraud, and collusion in the appointment of such receiver and the procurement of such orders.

This hearing continued for six days, and resulted in the action of the court reaffirming its previous orders, by which it undertook the operation of the properties and fixed the rates therefor.

It appears from such statement that subsequently, and while the appellants were before the court, two additional series of receiver's certificates were procured to be authorized and issued upon due application, notice, and hearing, of all of which the appellants were charged with full knowledge, and that such certificates so issued carried a lien upon all the properties then in the hands of the receiver, and that appellants at this time were in the attitude of admitting that their rights were being administered by the court through its receiver.

It appears from the appellants' second amended plea in intervention, by express allegations, and by reference to the orders and the proceedings of the court, that the Southern Trust Company, as the owner and holder of a certain interest in all those receiver's certificates, and in behalf of its co-owners, the Bankers' Trust Company, applied to the court for an order of sale of all of the properties possessed by the Mission Canal Company, then in the hands of the receiver; that the court, with scrupulous care, ordered notice of such application to be given to all parties to the suit, requiring copy of such plea to be given to the parties or their attorneys, with ample time to appear and show cause why the order of sale should not be issued; that, as appears from such record, appellants were served with copies of such plea, and, as shown by appellants' brief, they admit full notice of such hearing. Such record further shows that upon the report of the sale by the commissioner the notice of a hearing for confirmation thereof was required by the court, and for such purpose the motions for confirmation were required to be placed upon the motion docket, and such was done for more than five days prior to such hearing and that the sale was confirmed after hearing, at which no objections or exceptions were made or taken by appellants or any other parties. It is shown that this was about eight months prior to the filing of the second amended plea in intervention, and this court will take judicial notice that at least one term of such court had elapsed prior to the filing of such plea.

[1] The alleged water rights of appellants based on contract as set up in their second amended plea of intervention, among historical allegations in great detail, reaching back to the Society of Oblate Fathers, in our opinion passed out of this case upon the sale of the properties under the order of the court made upon the intervention of the Southern Trust Company, and became vested in the United Irrigation Company. If such properties, including appellants' alleged water rights, passed under the terms of the sale referred to, the question of the existence of such water rights vel non as against the Bankers' Trust Company or the Mission Canal Company or John J. Conway or the Southern Trust Company would become a moot question, in that the title to the property as against all parties having passed by the conveyance, the adjudication of such water right could avail nothing.

With the alleged water right disposed of by said sale, the remaining claim for damages asserted by appellants was based upon an alleged fraudulent and collusive appointment of the receiver and collusive procurement of orders relative to furnishing water by said receiver. The contention of appellees was, and the court concurred in the correctness thereof, that inasmuch as it appeared from the orders of the court, of which the court could and would take notice, and which were referred to the pleadings of appellants, that the acts complained of, upon which the alleged damage was predicated, were the acts of the receiver acting under orders of the court, and practically the acts of the court itself, that such could not form the basis of a claim for damages either against the receiver, the Bankers' Trust Company, the Mission Canal Company, or J. J. Conway, being the only parties against whom damages were claimed.

[2] As was contended by appellees, and such contention sustained by the court and reflected in its decree, the question of water rates, and the reasonableness thereof, passed out of the case with the disposition of the property under the order of sale referred to, inasmuch as the fixing of the water rates, as

against any other parties to the suit except the United Irrigation Company, could avail nothing; and the predicate for determining water rates as against the United Irrigation Company was not laid by the pleadings, in this: It did not appear that any application to the board of water engineers of the state had ever been made by appellants to fix the water rate as against United Irrigation Company, and the court sustained the contention of appellees that, without such being shown, no district court could entertain jurisdiction; and, further, it did not appear from the allegations of the plea of intervention that the United Irrigation Company had a supply of water not already contracted to others at the time or times of appellants' application therefor.

The foregoing contentions of appellees cover in the main appellants' entire case. In addition thereto, however, we would make the following three general observations, which we think answer most of the propositions asserted by appellants:

[3] (1) As a proposition of law underlying the major portion of appellants' case, and which effectively disposes of their contention that the plea of intervention of Southern Trust Company, upon which the sale of the properties was made, did not put in issue appellants' rights, it may be asserted that, if it should be conceded that such plea of intervention would not apprise appellants of the disposition thereafter made of their alleged interest in the properties in the hands of the receiver, the court, upon its own motion, had the undoubted right to sell and dispose of all the assets and properties which it had taken and was administering through its receivership. Again, appellants clearly having been apprised by said plea that some sale was under consideration, they would be required to take notice of the court's action thereon, and whatever properties, terms, and conditions it might subsequently embrace in the proposed sale.

[4] (2) It appeared from the pleadings of appellants, and the orders referred to therein, that the identical issue sought to be raised by the second amended plea of intervention, in substance, that the orders as to furnishing water were fraudulently and collusively obtained, and said receivership likewise collusively brought about, had been previously adjudicated by the court at a previous term upon the application of interveners, and its decree had not been excepted to and no appeal taken therefrom and therefore such matters were res adjudicata.

[5, 6] (3) What seems to be one of the main contentions of the appellants is that they have been deprived of their right of trial by jury. This contention is based on an entirely erroneous conception of the rights of the parties. Bearing in mind that this is a receivership case, in which the court, in the exercise of its equity powers, has deemed it advisable to take into its possession, through its receiver, the property of the Mission Canal Company, and, instead of merely holding the property, to operate, in the exercise of its equity powers the court certainly had a right to fix and determine the rates and conditions upon which the property should be conducted as a going concern; to issue obligations of its receiver, where necessary to continue operations, create liens upon all properties therefor, and to dispose of such properties to satisfy same, and if the court, sitting as a chancellor, should fix rates that were unjust, unreasonable, and discriminatory, or take any other action of the kind indicated, any party at interest would, of course, have his right of revision of any such order, but such revision could not be by jury, but by an appellate court. Whether or not he has a right of appeal at the time any such order is made is immaterial here, because the appellants did not seek to exercise such right, but apparently acquiesced in such ruling. If the contention of the appellants is correct, that they are entitled to a jury trial upon such matters in a receivership case, then the conduct of the receivership suit would rest with the jury instead of the court. The absurdity of this is apparent.

[7] Appellants had the right to appeal from the decree of the court adjudicating the matters put in issue by their original plea of intervention and the answers of the defendants thereto. Colonial Land & Loan Co. v. Joplin, 196 S. W. 626, and authorities there cited; Mills v. Paul, 4 Tex. Civ. App. 503, 23 S. W. 395, 396; Fagan v. Machine Co., 65 Tex. 331.

They were also charged with knowledge of the fact that it was the purpose of the Southern Trust Company by its intervention, in which the Bankers' Trust Company joined, to have all contractual rights, titles, interest, claims, obligations, demands, easements, covenants, benefits, and privileges of whatsoever character or kind theretofore existing and then existing, on the property sought to be sold, owned, held, claimed, or asserted by each and all the parties to the cause, sold free from all such rights, titles, demands, easements, etc., of said parties and each of them. They were charged with notice of the decree rendered in said intervention, with the sale of all such properties, rights, etc., under said decree, and with the confirmation of such sale by the court, and with the terms, extent, and effect of such decree, sale, and confirmation. They had the right to appeal from such decree, orders, and confirmation. No objection or appeal was made or perfected to or from such decree or order, and therefore the appellants cannot now attack such decree and orders in the manner sought by their second amended plea of intervention. In their second amended plea of intervention appellants pleaded and alleged the rendition and entry of such decree and orders.

We therefore conclude, as appears from what we have already said, that the trial court did not err in sustaining the special exceptions and general demurrers hereinbefore set out and in rendering the judgment appealed from. The judgment of the trial court appealed from is affirmed.

Affirmed.

### On Motion for Rehearing.

In our original opinion we held that the trial court correctly sustained special demurrers addressed to parts of appellants' pleading in intervention, and in thereafter sustaining appellees' general demurrer to said pleas, upon appellants' refusal to amend the same.

Appellants have filed their motion for rehearing, and therein insist, first, that the trial court and this court, in passing upon the question of whether the demurrers to their petition, both special and general, should have been sustained, should have found and considered only such facts as were alleged in the petition demurred to, and that this court erred in finding and considering the contents of certain orders and decrees made and entered by the trial court in this cause, and in finding and considering the allegations of certain pleas of other parties to the suit, and in finding and considering other facts not alleged in their petition, in determining such question; second, that this court in its opinion erroneously failed to find and consider all the facts alleged by appellants in their pleas in intervention.

[8] We recognize and are governed by the well-established rule stated in the cases, cited by appellants in their motion, to wit, that in passing upon general demurrers to a pleading the court must look to and consider only such matters of fact as are alleged in such pleas; but, after a careful review of the record, we conclude that all the material findings of the court complained of by appellants in their motion are made to appear from, and are supported by, specific allegations of the pleas of appellants which were before the trial court at the time the demurrers were passed upon and sustained, or from a reasonable inference to be drawn therefrom.

It is undoubtedly true that the findings in the opinion do not set out all the allegations of appellants' pleas, which are very numerous, and which cover more than 40 pages of the transcript. It is also true that we did not consider all of such allegations in passing upon the question of the correctness of the action of the trial court in sustaining the demurrers, as we are of the opinion that many of the allegations were not material in deciding the question as to whether or not the trial court erred in sustaining the demurrers of appellees.

We think, however, that we have fairly set out in our opinion all facts alleged in appellants' pleas material and reasonably necessary for a proper review of the questions presented by this appeal.

The motion for rehearing is refused.